COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Coleman and Elder
Argued at Richmond, Virginia


DONNA G. REECE
                                             OPINION BY
v.        Record No. 0946-95-2         JUDGE LARRY G. ELDER
                                           APRIL 30, 1996
WILLIAM M. REECE


             FROM THE CIRCUIT COURT OF HANOVER COUNTY
                   Richard H. C. Taylor, Judge


          Andrea R. Stiles (Kelly Harrington Johnson;
          Williams, Mullen, Christian & Dobbins, on
          brief), for appellant.

          Murray J. Janus (Deanna D. Cook; Bremner &
          Janus, on brief), for appellee.


     Donna G. Reece (wife) appeals the trial court's decision to

reduce William M. Reece's (husband) monthly spousal support

obligation.  Wife contends that husband became voluntarily

underemployed when he lost his job and failed to find comparable

employment in the Richmond, Virginia area or when he refused to

accept comparable employment in Tampa, Florida.  Finding that the

trial court did not abuse its discretion, we affirm its decision.

                               I.

                             FACTS

     Wife and husband married on January 24, 1968, separated on

July 1, 1993, and divorced on December 7, 1994.  Until October

1993, R.J. Reynolds Tobacco Company employed husband in Richmond

as a regional accounts manager, paying him approximately $145,000

per year.  Unemployed during most of the marriage, wife found

employment after the separation, which paid her $11,600 per year. On July 28, 1993, the trial court ordered husband to pay pendente lite spousal support to wife in the amount of $1,000 per month.

Although R.J. Reynolds Tobacco Company eliminated husband's position in October 1993, it offered him an equivalent paying position as a senior chain accounts manager in Tampa, Florida. Husband declined the employment offer. In October 1993, R.J. Reynolds Tobacco Company gave husband a severance package worth approximately $110,000 per year. The package terminated in March 1995, seventeen months later. After the separation and divorce, wife continued to earn approximately $11,500 per year. On December 7, 1994, the trial court granted the parties a divorce, accepted the commissioner's spousal support recommendation, and ordered husband to continue to pay wife $1,000 per month in spousal support.

On February 6, 1995, two months after the trial court's order, husband filed a motion to decrease his spousal support payments based on a material change in circumstances. At the time of the trial court's hearing on husband's motion, husband was employed as a real estate agent in Ashland, Virginia. Husband testified that his gross income had decreased to $1,752 per month, which gave him insufficient funds with which to pay wife $1,000 per month in spousal support. Husband also testified that his severance pay from R.J. Reynolds Tobacco Company ended

in March 1995.  Finally, husband testified that he believed it could take three years "to really get to the point where [he could be] making some money."  Wife presented no evidence showing other comparable jobs were available to husband.  The trial court found that husband sustained his burden of proof and reduced the amount of monthly spousal support owed to wife from $1,000 to $430 per month.

## II.

### MODIFICATION OF SPOUSAL SUPPORT

On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party below.  Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992).  A presumption exists that the trial court based its decision on the evidence presented and properly applied the law.  Williams v. Williams, 14 Va. App. 217, 221, 415 S.E.2d 252, 254 (1992).  Furthermore, a trial court's judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it.  Jennings v. Jennings, 12 Va. App. 1187, 1189, 409 S.E.2d 8, 10 (1991).

Code § 20-109 states that "[u]pon petition of either party the court may increase, decrease, or terminate spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper."  "The moving party in a petition for modification of support is required to prove both [1] a material change in circumstances and

-3-

[2] that this change warrants a modification of support."
Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). See Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992); Code § 20-109.

Husband satisfied the first prong by a preponderance of the evidence, when he proved that his financial circumstances had materially changed following the trial court's last decree after he had involuntarily lost his job. See Edwards v. Lowry, 232 Va. 110, 112, 348 S.E.2d 259, 261 (1986). Husband testified that in October 1993, R.J. Reynolds Tobacco Company eliminated his job as a regional accounts manager, which paid him $145,000 per year. At the time of the trial court's support modification hearing, husband no longer received his severance pay from R.J. Reynolds Tobacco Company. Instead, husband was employed as a real estate agent, earning a substantially reduced monthly income of $1,700. Wife did not dispute any of this evidence, which, when viewed as a whole, demonstrated a material change in husband's financial circumstances.

Aside from having to prove a material change in circumstances, husband had to prove that this change warranted a support modification. In discharging this burden, one of the circumstances that the chancellor must consider is whether the changed circumstances arose from his own voluntary underemployment. Edwards, 232 Va. at 112-13, 348 S.E.2d at 261. A trial court may use its broad discretion in deciding whether a

material change in circumstances warrants a modification in the amount of support.[1]

Both parties agree that husband did not voluntarily choose to leave his job as a regional accounts manager; rather, R.J. Reynolds Tobacco Company eliminated his position through no apparent fault of husband's. Both parties also agree that husband voluntarily elected not to relocate in order to accept comparable employment in Tampa, Florida. Wife argues that as a consequence the trial court was required to impute income to husband because he became voluntarily underemployed when: (1) he refused to market his skills and locate comparable employment in the Richmond, Virginia area, and (2) he declined R.J. Reynolds Tobacco Company's offer of comparable employment in Florida.

The parties agree that a supporting spouse has the right to change employment voluntarily or embark upon a new career. Nothing in the record rebuts the contention that husband's acceptance of a job as a real estate agent in the Richmond area was a "bona fide and reasonable business undertaking" entered into after he involuntarily lost his prior employment. Rawlings v. Rawlings, 20 Va. App. 663, 669, 460 S.E.2d 581, 583 (1995). Although at the time of the hearing, husband was making less money per year than his former position paid, he expected his

---

[1] Unlike spousal support cases, in cases involving the modification of child support obligations, a trial court must calculate child support according to the presumptive amounts outlined in Code § 20-108.2. Such presumptive amounts do not exist in cases involving spousal support.

-5-

income to increase within three years.

Furthermore, the record does not show that husband refused comparable employment in Richmond merely for his personal convenience and without consideration of his family. Cochran v. Cochran, 14 Va. App. 827, 830, 419 S.E.2d 419, 421 (1992). There is nothing in the record to show that such employment existed in Richmond. The trial court specifically asked wife if she had "any evidence to show that [husband] had an opportunity to have employment other than [the Tampa job]?" Wife responded that she did not have any such evidence. Neither did wife introduce any evidence to show that husband, in accepting employment as a real estate agent, deliberately minimized his income for the purpose of reducing his ability to support wife, who was not living under necessitous circumstances. Therefore, husband met his burden of showing a material change in circumstances that warranted a support modification.

Whether a supporting spouse is voluntarily unemployed or underemployed when he or she refuses to accept comparable employment in another geographical area is a question of first impression in Virginia. After reviewing the law of this state and other jurisdictions, we find no authority for a per se rule which would hold that a supporting spouse always becomes voluntarily underemployed or unemployed when he or she refuses to accept an offer of comparable employment in another geographic

-6-

location.[2] We decline the invitation to adopt a bright line rule. A trial court shall consider factors in addition to refusing comparable employment in another locale when deciding whether either spouse is voluntarily unemployed or underemployed. See O'Brien v. Rose, 14 Va. App. 960, 964, 420 S.E.2d 246, 249 (1992).

As explained above, the trial court made the factual finding that husband, through no fault of his own, became involuntarily unemployed when his employer eliminated his position. The trial court also found that husband voluntarily elected not to accept comparable employment in Tampa, Florida. These two findings of fact, by themselves, did not allow the trial court to determine whether to impute income to husband. This case, therefore, differs from Antonelli and other cases that are factually similar to Antonelli. In Antonelli, the trial court made a factual

---

[2] None of the cases cited by wife supports her contention that because husband refused his employer's transfer offer, he became voluntarily underemployed. For example, in Butler v. Butler, 217 Va. 195, 227 S.E.2d 688 (1976), the Supreme Court held that the physician-husband's voluntary decision to remain in a lower-salaried, career-oriented, staff position sacrificing immediate income for future expectations could not be permitted to penalize his former wife by reducing her support payments. In Antonelli v. Antonelli, 242 Va. 152, 156, 409 S.E.2d 117, 119-20 (1991) the Supreme Court upheld the trial court's decision that the husband, who voluntarily left his position as a salaried stock broker to become a commissioned stock broker, only to suffer a decrease in income, was not allowed to reduce his child support payments to his former wife. Similarly, in Taylor v. Taylor, 203 Va. 1, 121 S.E.2d 753 (1961), the Supreme Court held that the husband, who voluntarily left his job to accept a lower-paying job, was not allowed to reduce his support payments. See also Barnhill v. Brooks, 15 Va. App. 696, 427 S.E.2d 209 (1993).

-7-

finding that the supporting spouse <u>voluntarily</u> chose to leave his existing job to pursue other employment and therefore declined to grant the supporting spouse's petition to reduce support. <u>Antonelli</u>, 242 Va. at 156, 409 S.E.2d at 119-20. Here, because husband <u>involuntarily</u> left his job, the trial court's inquiry differed from the onset. Trial courts, in cases such as this, must exercise their discretion in determining whether the obligor's actions after being involuntarily terminated constitute voluntary underemployment and whether income should therefore be imputed.

In deciding whether failure to relocate constitutes voluntary unemployment or underemployment to justify imputing income, the trial court shall consider all the evidence in each case. In exercising its discretion, a trial court should consider a number of factors, <u>including but not limited to</u>: (1) the supporting spouse's business ties to the community; (2) the supporting spouse's familial ties to the community; (3) whether the supporting spouse's relocation would have an undue deleterious effect upon his or her relationship with his or her children or other family members; (4) the length of time in which the supporting spouse has resided in the community; (5) monetary considerations which would impose an undue hardship upon the supporting spouse if he or she were forced to relocate; (6) the "quality of life" in the respective communities; (7) the geographic distance between the respective communities; and (8)

the severity of the burden which a failure to relocate would have on the obligee spouse.

In this case, the trial court did not abuse its discretion in not imputing income after finding that husband did not become voluntarily unemployed or underemployed when he refused to relocate to Tampa, Florida. The record reveals that the trial court had before it sufficient facts to make such a determination. First, the record reveals that husband, who was forty-nine years old, had strong familial ties to Richmond. Husband supported one daughter, who attended a local college and lived with husband in Richmond, and he had another grown daughter who also lived in the area. Second, husband had substantial business ties to Richmond. He worked for R.J. Reynolds Tobacco Company for an extended period of time while operating a small golf supply business, and then took a job as a real estate agent in nearby Ashland, Virginia. Third, wife was not destitute nor did she suffer from health problems that necessitated a greater amount of financial support. Finally, the great geographic distance between Richmond and Tampa was a relevant consideration for the trial court.

In light of the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Baker, J., concurring in result.

I join with the majority only because I believe that, viewed in the light most favorable to the prevailing party below, the evidence supports the trial court's decision; therefore, I cannot say that its decision was plainly wrong. If the trial court had held on this same evidence that husband had become voluntarily underemployed, I believe that, viewing the evidence in the light most favorable to wife, we would have found evidence to support that decision and we could not have said that it was plainly wrong or that an abuse of discretion had been shown.

In matters of this nature, with this kind of evidence, generally, the decision of the trial court that views the witnesses must be upheld.