754 So.2d 903 (2000)
Lloyd H. STEBBINS, Appellant,
v.
Donna J. STEBBINS, Appellee.
No. 1D99-786.
District Court of Appeal of Florida, First District.
April 25, 2000.
*904 Lawrence C. Datz of Datz, Jacobson, Lembcke & Wright, P.A., Jacksonville, for Appellant.
Charles E. Willmott, Jacksonville, for Appellee.
BROWNING, J.
Lloyd H. Stebbins (Appellant), the former husband, appeals the trial court's final judgment entered upon petitions filed by Appellant and his former wife, Donna J. Stebbins (Appellee), n/k/a Donna Allen, seeking modification of a supplemental final judgment of dissolution of marriage; he appeals also the court's order holding him in contempt and ordering him to pay a purge amount or else report to jail. Appellant contends that the lower court reversibly erred 1) by finding that he was voluntarily unemployed, thereby justifying the imputation of income, based on his failure to search for work in other states; 2) by imputing income to him also based on the finding that he had refused to look for work outside his narrow field of employment; 3) by holding him in contempt for failure to comply fully with his child-support obligation; 4) by ordering him to pay a purge amount or else go to jail for contempt, without making an affirmative finding of his present ability to pay the purge amount; and 5) by ordering him to contribute to Appellee's attorney's fees. Given the need for the trial court to reconsider the factors and make findings pertinent to the threshold issue of whether Appellant was voluntarily unemployed or underemployeda determination that will affect whether income can be imputed to himwe reverse the final judgment on the parties' petitions for modification of the supplemental final judgment of dissolution of marriage, and remand for further proceedings consistent with this opinion. As the trial court's findings on remand regarding the question of voluntariness will impact the determination of whether Appellant was in contempt for failure to make full payments of child support, we reverse the order of contempt and the purge provision, with instructions that the lower tribunal make the necessary findings pursuant to Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), and Scapin v. Scapin, 553 So.2d 319, 320 (Fla. 1st DCA 1989).
The parties' 14-year marriage was dissolved by a July 1996 final judgment. They stipulated that Appellee would be the primary residential parent of their daughter, who is now 16 years old. Pursuant to the parties' written agreement, the trial court entered a February 1998 consent supplemental final judgment of dissolution of marriage modifying the final judgment and increasing Appellant's biweekly child support obligation to $420. Only a month later, Appellant filed a supplemental petition for modification of the consent judgment on the grounds that during the interim period, his ability to pay the agreed amount of support was substantially diminished due to forced 50 per cent reductions in his work hours and earnings arising from his employer's financial problems. Less than a month later, he amended his petition to allege that he had been involuntarily terminated from his employment and anticipated his reduced earnings to continue indefinitely. Without court authorization, Appellant began pro-rating the amount of his child support payments in direct proportion to his significantly reduced earnings.
Appellee responded with allegations that Appellant continuously and purposely had remained underemployed outside his area of expertise as the parties' child's support needs increased. Appellee counter-petitioned for an increase in child support.
After Appellant's part-time teaching work ended his entitlement to unemployment compensation, Appellee filed a motion for contempt alleging that Appellant was in willful contempt of court for failing to comply fully with the requirement to pay $420 biweekly for child support, and that he owed more than $4,000 in support. Both parties moved for attorney's fees and costs.
*905 For the trial court's benefit, we shall discuss the issues of imputation of income, the finding of contempt, and the responsibility for contributing to Appellee's attorney's fees separately, although the lower court's initial decision to impute income bears upon the other rulings.

IMPUTATION OF INCOME
The Florida child support guidelines statute mandates the imputation of income under the following circumstances:
Income on a monthly basis shall be imputed to an unemployed or underemployed parent when such unemployment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for the parent to stay home with the child.
§ 61.30(2)(b), Fla. Stat. (Supp.1998); Smith v. Smith, 737 So.2d 641 (Fla. 1st DCA 1999).
Appellant, who is in his mid-fifties, has a B.S. degree in chemical engineering from Bucknell and 19 graduate-level credits (2/3 of the credit requirements for an M.A. degree) from Lehigh. He is a professional engineer with a field concentration in environmental issues such as industrial regulatory compliance. His employment history since 1989 includes extended periods with annual earnings generally ranging from $65,000 to just over $90,000 in positions such as division manager, environmental consulting manager, and corporate vicepresident, punctuated by several extended periods of unemployment or only part-time employment. He has worked for paper mills, chemical plants, pharmaceutical concerns, food and beverage plants, and heavy-duty manufacturers.
At the time of the dissolution hearing, Appellee was a part-time telephone service representative at Barnett Card Services earning $9.90 per hour for 20 hours a week and grossing $792.20 monthly. She testified to having received recent notice that the parent employer, Nations Bank, was moving a department to North Carolina in January 1999 and would terminate her job in Jacksonville and provide 4.2 weeks' pay. She was looking for another job.
In the challenged order, the trial court made the following findings to support its conclusion that Appellant's unemployment beginning in May 1998 initially was involuntary but subsequently became voluntary, thereby allowing income to be imputed to him for determining his child support obligation:
The Former Wife presented sufficient evidence through the testimony of an expert witness that the Former Husband failed to use his best efforts in attempting to obtain new employment and that the Former Husband acted unreasonably in limiting his job search to the immediate Jacksonville area and to the narrow field of engineering. The Former Husband presented evidence that during the initial 90 days following his termination ... he performed a diligent search for employment in his field limited to the Jacksonville area. However, the Court finds the Former Husband should have found adequate employment within 90 days and would have used his best efforts in obtaining employment had he conducted a broader job search of the southeast to include Georgia, Texas, Louisiana, and other parts of Florida if he wished to remain employed in the field of engineering which should have yielded a job with a salary between $60,000.00 and $65,000.00 based upon the testimony of the Wife's expert. He [Appellant] did not sufficiently consider other areas of full-time *906 employment outside his chosen field in the Jacksonville area.
Former Husband testified that he voluntarily limited his search for employment to the Jacksonville area. The Former Husband further testified that the primary focus of his job search was in the field of engineering. The Former Husband's work history includes significant experience in the management field as well as engineering, but the Former Husband admitted that his job search within the management field was very limited. The Former Wife's expert witness testified that the Former Husband has also unreasonably limited his job search to the engineering field, and that the Former Husband's extensive management experience qualifies him for numerous positions outside of the engineering field. The Former Husband's employment opportunities would be greatly enhanced if he broadens his search to include the management field. In his own testimony, the Former Husband stated that "management is management" and his management experience would qualify him for similar positions outside the engineering field; namely, he has experience in general engineering, sales, marketing and general management, including executive management as a vice president, general manager, and director for various former employers. In limiting his search, the Former Husband has failed to utilize his best efforts in securing adequate employment. The Former Husband's initial unemployment was involuntary; however, the Former Husband's continued underemployment is voluntary since he could have secured adequate employment within 90 days if he had used his best efforts in his search for employment. See Desilets v. Desilets, 377 So.2d 761, 764 (Fla. 2d DCA 1979). Once it became apparent that full-time jobs in engineering in Jacksonville were not going to be available, other areas of full-time employment should have been explored.
Since the Former Husbands's [sic] continued unemployment is voluntary, the Court cannot find that a significant change of circumstances exists to support the Former Husband's Petition for Modification in order to reduce his child support payments. See Burdett[e] v. Burdette, 681 So.2d 862, 863 (Fla. 5th DCA 1996); Hirsch v. Hirsch, 642 So.2d 20 (Fla. 5th DCA 1994). The Former Wife has presented sufficient evidence through her expert witness that the Former Husband is voluntarily unemployed and the Court must impute a[n] income to the Former Husband based on his most recent work history, his occupational qualifications, and prevailing earnings. See Connell v. Connell, 718 So.2d 842 (Fla. 2d DCA 1998). Evidence presented by the Former Wife's expert demonstrates that the Former Husband should be currently employed at an annual salary of $65,000.00, which is his approximate former salary. An annual salary of $65,000.00 should be imputed to the Former Husband in calculating his child support obligation; however, since his current child support obligation in the sum of $420.00 bi-weekly is based upon the Former Husband's most recent employment at substantially the same salary, the Court finds that no substantial change in circumstance has occurred to warrant any increase or decrease in child support. The Former Husband maintained funds in an excess account.
Appellant challenges these findings on two grounds. First, he asserts that the trial court erred as a matter of law by imputing income upon finding that his unemployment or underemployment was voluntary due to his failure to search for work in large metropolitan areas of Georgia, Louisiana, or Texas. Second, he contends that the lower tribunal abused its discretion by imputing income based on the finding that Appellant had refused to look for work outside his "narrow field of engineering," where the only competent *907 substantial evidence of record established the opposite conclusion.
The imputation provisions of section 61.30(2)(b), Florida Statutes, have been construed to include an "intent" element supported by findings of fact. The district court in Hogle v. Hogle, 535 So.2d 704 (Fla. 5th DCA 1988), stated:
In order to impute income, the trial judge must find that the parent owing a duty of support has the actual ability to earn more than he or she is currently earning, and that he or she is deliberately refusing to work at that higher capacity to avoid support obligations.
Id. at 705; Wendroff v. Wendroff, 614 So.2d 590 (Fla. 1st DCA 1993); Seilkop v. Seilkop, 575 So.2d 269 (Fla. 3d DCA 1991). The trial court erred by imputing income without making any specific finding regarding whether Appellant had the requisite willfulness or intent to avoid his support obligations. In fact, Appellant paid the full amount of child support until his then-employer cut his pay in half in conjunction with a work reduction plan, after which Appellant continued to pay a proportionately lower amount of support according to his own logical method. Although his unilateral decision to modify the agreed amount of payment and to pay less support without court approval clearly was not authorized or excused by the court, see Onley v. Onley, 540 So.2d 880 (Fla. 3d DCA 1989), the surrounding facts do bear upon the separate question of whether Appellant was deliberately refusing to work in order to avoid his support duty.
Moreover, the trial court appeared to base its finding of voluntary unemployment, in large measure, upon the failure of Appellant, who is a longstanding Jacksonville resident, to seek employment in the large metropolitan areas of other states. Appellant argues that Florida law does not authorize such an obligation upon the child support payor, essentially forcing him either to move his (and his current wife's) primary residence and to be separated by a considerable geographical distance from the parties' teenage daughter or else to have income imputed to him for support purposes and to face contempt sanctions for noncompliance. Appellee has not cited any Florida statutory or decisional source that clearly would mandate a long-distance, out-of-state job search under the circumstances presented in the instant record, and our independent research has disclosed no such bright line rule. To the contrary, appellate decisions in several other states have reached results contrary to the instant trial court's rulings. See, e.g., Otterson v. Otterson, 571 N.W.2d 648 (N.D.1997); Reece v. Reece, 22 Va.App. 368, 470 S.E.2d 148 (App.1996).
Although the appellate posture of the case in Reece, 470 S.E.2d at 148, differs from the case at bar, we find the reasoning in this Virginia decision instructive for determining whether a payor spouse's failure to seek employment or to relocate in distant locales constitutes voluntary unemployment or underemployment to justify imputing income. The Reeces separated in July 1993 after 25 years of marriage. Until October 1993, Mr. Reece was employed in Richmond, Virginia, by R.J. Reynolds Tobacco Company (R.J. Reynolds) as a regional accounts manager earning about $145,000 a year. Mrs. Reece, who was unemployed during most of the marriage, found employment after the separation, which paid her $11,600 a year. Although R.J. Reynolds eliminated Mr. Reece's position in Richmond in October 1993, it offered him another position with equivalent pay as a senior chain accounts manager in Tampa, Florida. After Mr. Reece declined the employment offer, R.J. Reynolds gave him a severance package worth approximately $110,000 a year, which terminated 17 months later. The trial court granted a divorce and ordered Mr. Reece to pay $1,000 per month in spousal support. Two months after the dissolution decree, Mr. Reece filed a motion to decrease his spousal support payments based on a material change of circumstances. *908 When the motion was heard, he was employed as a real estate agent in Ashland, Virginia, with a gross monthly income of $1,752. His severance pay had ended. Mr. Reece testified that he believed it would take three years for him to be in a position to make "some money." Id. at 150. Mrs. Reece presented no evidence showing that other comparable jobs were available to her former husband. Finding that Mr. Reece had sustained his burden of proof, the trial court reduced the monthly spousal support obligation to $430. The former wife appealed the downward modification. Id. at 150-51.
Substantially like the case law interpreting section 61.14, Florida Statutes (1997), Virginia law required a party seeking modification of spousal support to prove both that the circumstances had materially changed and that this change warranted a support modification. Id. at 151. Mrs. Reece did not dispute the evidence that the former husband had involuntarily lost his R.J. Reynolds job in Richmond, that he was no longer receiving severance pay, and that his monthly income as a real estate agent was $1,700. The Virginia Court of Appeals concluded that a preponderance of the evidence showed that his financial circumstances had changed materially since the last court decree, thereby satisfying the first prong. One of the circumstances to be considered in assessing the proof on the second prong was whether the changed circumstances arose from the movant's own voluntary unemployment. The parties agreed that the former husband had not voluntarily chosen to leave his job as regional accounts manager, and that R.J. Reynolds had eliminated his position through no fault of his own. Both sides agreed that Mr. Reece had voluntarily elected not to relocate in order to accept a similar position in Florida. Mrs. Reece asserted that the trial court was required to impute income to the former husband because he became voluntarily underemployed by refusing to market his skills and to locate comparable employment in the Richmond area and by declining R.J. Reynolds' offer of a comparable job in Tampa. The appellate court found that nothing in the record rebutted Mr. Reece's contention that his acceptance of the real estate job in the Richmond area was "a reasonable business undertaking" made in good faith after his involuntary loss of prior employment. Even though he earned less in the real estate job, the former husband expected his income to rise within three years. There was no showing either that he had refused comparable work in Richmond merely for his own convenience and without regard for his family or that such employment existed in Richmond. No evidence was introduced indicating that Mr. Reece had intentionally reduced his earnings to hinder his ability to support the former wife. Id. at 151-52.
After reviewing the law of Virginia and of foreign jurisdictions, the court of appeals concluded:
[W]e find no authority for a per se rule which would hold that a supporting spouse always becomes voluntarily underemployed or unemployed when he or she refuses to accept an offer of comparable employment in another geographic location.
Id. at 152. The panel declined to adopt "a bright line rule." Id. Instead, the panel in Reece determined that a trial court must consider other factorsin addition to the petitioner's refusing comparable employment in another localein deciding whether either spouse is voluntarily unemployed or underemployed. Id. Specifically, the appellate court offered the following non-exclusive list of factors to be considered by the trial court in deciding the issue at hand:
In deciding whether failure to relocate constitutes voluntary unemployment or underemployment to justify imputing income, the trial court shall consider all the evidence in each case. In exercising its discretion, a trial court should consider a number of factors, including but not limited to: (1) the supporting spouse's *909 business ties to the community; (2) the supporting spouse's familial ties to the community; (3) whether the supporting spouse's relocation would have an undue deleterious effect upon his or her relationship with his or her children or other family members; (4) the length of time in which the supporting spouse has resided in the community; (5) monetary considerations which would impose an undue hardship upon the supporting spouse if he or she were forced to relocate; (6) the "quality of life" in the respective communities; (7) the geographic distance between the respective communities; and (8) the severity of the burden which a failure to relocate would have on the obligee spouse.
Id. at 152-53. The court of appeals concluded that the trial court had not abused its discretion in not imputing income after finding that Mr. Reece did not become voluntarily unemployed or underemployed when he declined to relocate to Tampa. The following evidence supported this finding: the 49-year-old former husband had strong familial ties to Richmond; he had supported one daughter who attended a local college and lived with him, and another grown daughter lived in the area; he had substantial business ties to Richmond arising from several prior or current jobs; Mrs. Reece was not destitute and did not suffer from health problems that necessitated a greater amount of financial support; and Richmond and Tampa were separated by a great geographic distance. In light of this record, the downward modification was affirmed. Id. at 153.
Like the court of appeals in Reece, we decline the opportunity to adopt a bright line rule on the issue at hand. In remanding the case to the trial court, we offer the factors set forth in Reece as a useful starting point in determining whether the record supports a finding of voluntary unemployment or underemployment.
Where a finding of voluntary unemployment or underemployment is made, section 61.30(2)(b), Florida Statutes (1997), states that the trial court is to determine the parent's employment potential and probable earnings level based on the his or her "recent work history, occupational qualifications, and prevailing earnings level in the community." (Emphasis added). See Connell, 718 So.2d at 843. Thus, the prevailing income "in the community," not income that could have been earned from a relocation, is to be used in establishing the amount of imputed income. If community income is to be used in setting imputed income, then it seems only reasonable and logical that the test for an adequate job search should be limited to the area of the person's resident community. Given the record on appeal, we cannot tell whether the trial court would have reached the same conclusions if it had not focused on the requirement of a job search covering a broader geographic area and requiring a relocation.
At the hearing, Appellant admitted voluntarily limiting his job search to his resident community, the Jacksonville area. When asked why he had not looked for work in other Florida cities or in other southeastern states, Appellant opined that the unfortunate circumstance of a child's coming from a broken home was compounded when the parents live in different, distant locales. Appellant indicated that because he regretted having missed out on more frequent communications with two adult daughters who lived a great distance from Jacksonville, he had vowed not to let that happen again with the parties' minor child. Appellant testified in detail regarding the steps he has taken to play a more meaningful role in the younger child's life. He testified also that he has longstanding employment ties and business connections in the Jacksonville community that he believed would assist him in securing full employment.
Although the trial court is charged with determining the credibility of witnesses and is free to find Appellant's testimony on this matter not credible, we remand for further findings in light of the Reece factors *910 and the reasoning therein. We cannot determine from the judgment whether the lower court would have reached the same conclusions on the issue of voluntariness and, if so, in the same amount absent the requirement that a reasonable job search include inquiry into employment opportunities a great geographical distance from Florida. See Burkhardt v. Bass, 711 So.2d 158 (Fla. 4th DCA 1998) (only § 61.30(2)(b), Fla. Stat., requirement for imputation of income is a finding that the parent is voluntarily unemployed or underemployed, but purpose of appellate court's requirement of factual findings is "to facilitate meaningful appellate review" of trial court's decisions involving fact-finding and exercise of judicial discretion). Furthermore, we note that some of the opinions rendered by Mr. Rasco, the expert witness in occupational analysis, regarding job availability, a reasonable time for securing employment, and prevailing earnings presuppose that an adequate job search would include an inquiry into jobs in Louisiana, Texas, and Georgia. For this reason, the parties should be given the opportunity to present additional evidence, if needed, in light of our conclusions.

FINDING OF CONTEMPT
The trial court found that in unilaterally deciding to modify the amount of his child support payments, Appellant violated the terms of the supplemental final judgment of dissolution of marriage, and that Appellee is entitled to the past-due amounts of child support. Having found Appellant to be in willful contempt of court for failure to pay the full support obligation, the court ordered him to pay a purge amount of $2,730.00 (the equivalent of three months' support), to make current all past-due support payments, and to meet his current child support obligations, each within 90 days, or else report to the Duval County Jail to begin a 30-day sentence for contempt.
Civil contempt proceedings are intended primarily to obtain future compliance by the person who is subject to the court's order. See Gregory v. Rice, 727 So.2d 251, 253 (Fla.1999). As incarceration is used only to obtain compliance, this severe sanction is to be used only when the contemnor is shown to be able to comply. In its seminal decision in Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), the Supreme Court of Florida addressed the prerequisites for incarceration for civil contempt:
We continue to adhere to the view that incarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt. Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door.
Id. at 1277. We have held that implicit in the Bowen analysis is the notion that "present ability to pay means that the contemnor have actual resources that could be used to purge himself of contempt." Scapin v. Scapin, 553 So.2d 319, 320 (Fla. 1st DCA 1989). Thus, "if a civil contemnor is without any assets or cash to pay the purge amount, a trial court cannot jail him for civil contempt." 553 So.2d at 320.
At oral argument, Appellee's counsel conceded that the trial court erred in ordering Appellant to report to jail to begin a 30-day sentence without making the requisite affirmative findings under Bowen and Scapin. Accordingly, we reverse that portion of the judgment.

ATTORNEY'S FEES
The trial court ordered Appellant to pay $2,033.21 of Appellee's attorney's fees plus $1,100.00 toward the costs of the action. He was permitted to pay these fees and costs in monthly installments of $300.00 each. "In deciding whether an award of attorney's fees is justified, a trial court may impute income to a voluntarily unemployed or voluntarily underemployed party." Smith, 737 So.2d at 643; Arouza v. Arouza, 670 So.2d 69 (Fla. 3d DCA 1995). However, inasmuch as the question of the *911 voluntariness of Appellant's unemployment or underemployment must be revisited on remand, thereby possibly impacting the basis for imputing income, the ruling requiring Appellant to pay a portion of Appellee's fees and costs must be reversed and reconsidered as well.
REVERSING the final judgment on petitions for amended modification, REVERSING the order of contempt against Appellant and the purge provision, and REMANDING for further proceedings and findings.
BENTON and VAN NORTWICK, JJ., CONCUR.