UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Beales and Decker
Argued at Salem, Virginia


ADAM CHRISTOPHER ARMSTRONG

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0141-18-3                 JUDGE RANDOLPH A. BEALES
                                                         OCTOBER 30, 2018
KRISTY MARIE ROADCAP


             FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                          Bruce D. Albertson, Judge

            Shelly R. James (John Elledge & Associates, on briefs), for
            appellant.

            Derrick W. Whetzel (GravesWhetzel Law, PLLC, on brief), for
            appellee.


        On January 3, 2018, the Rockingham County Circuit Court entered a protective order

against Kristy Roadcap ("mother") prohibiting "acts of family abuse or criminal offenses that result

in injury to person or property" and prohibiting contact of any kind with Adam Armstrong

("father").  Father argues on appeal that the "trial court erred when it failed to include the parties'

child in the protective order that was issued by that court because the evidence was sufficient to

prove that such relief was needed to protect the child."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I.  BACKGROUND[1]

Father and mother were married on May 16, 2015, and their daughter was born in the summer of 2016.[2]  During their marriage, father and mother separated and subsequently reconciled numerous times, including before and after the child was born.  On August 1, 2016, father and mother signed a custody agreement, giving both parents "shared physical and legal custody and equal time with [the child]."  As the interactions between them became more and more hostile over time, father on November 27, 2017, filed a petition for a protective order.  The juvenile and domestic relations district court issued a protective order for both father and the child, prohibiting mother from contacting either of them.  Mother appealed to the circuit court.  During the *ore tenus* hearing before the circuit court on January 3, 2018, regarding father's petition for a protective order, both parties provided a considerable amount of testimony concerning their tempestuous relationship.  On that same day, the circuit court issued a protective order prohibiting mother from contacting father only – not the child.  Father subsequently appealed to this Court the circuit court's ruling that did not include the child in the protective order.

In this appeal, we focus on the incidents most pertinent to any potential danger the child faced from mother's actions.  We note that we can consider only the record before us – i.e., only the facts presented to the circuit court as of January 3, 2018, that are in the record on appeal.

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant.  Evidence and factual findings below that are necessary in order to address the assignment of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed."  Levick v. MacDougall, 294 Va. 283, 288 n.1, 805 S.E.2d 775, 777 n.1 (2017).

[2] We refer to their daughter in this opinion as "the child," instead of the child's actual name, in an attempt to better protect her privacy.

Father testified that, on multiple occasions, mother entered his house while the child was with father – and without father's permission or invitation. In September 2016, when the child was with father, mother came to father's house at 3:00 a.m. and began to knock loudly on his door. He opened the door to find her drunk and unwilling to leave. She entered his bathroom, vomited, and, after some time, finally departed. In May 2017, after father answered the door to find mother there, he testified that mother pushed her way past him to enter the house, made her way into the living room, and engaged in a conversation during which she stated that she hated that house and often thought of burning the house down with father and the child in it. However, in her testimony, mother denied ever threatening to burn down father's house.[3] Father testified that in June 2017, after he would not allow mother to enter his house at approximately 5:30 a.m., mother called the police, who then came to the house with her, helped provide her entry into his house, and then allowed her to "take any and everything she wanted." Father testified that he was not aware anyone was in his home until he heard footsteps coming up his stairs. Mother's testimony regarding this incident was that she sought to retrieve her work laptop and other belongings from father's house at approximately 5:30 a.m. after father had forced her to leave the previous night. When he would not allow her to enter the house or even agree to place her belongings outside the house for her to retrieve, mother testified that she called the police, who came to the house and "did stand by" while she entered the home and retrieved her belongings.

Father also testified that mother had been in multiple car accidents since the time he had known her, including at least one accident in September 2017 that was described by father as a "car-totaling accident." When father saw the child after that car-totaling accident, she had a black eye, which led father to believe she was in the car when the accident occurred. Father

---

[3] Mother was asked, on direct examination, "Have you ever threatened to burn [father's] house down?" Mother answered "No."

testified that mother denied that the child was in the car when the accident occurred.[4] A witness for mother testified that the child received the black eye as a result of falling out of a chair while at the beach.

In November 2017, according to both parties' testimony, mother and father met in a 7-Eleven parking lot to exchange the child. Father was already in the parking lot when mother, with the child in her car, pulled into a parking space a few spaces away from father's car. As father approached mother's car to retrieve the child, mother quickly exited her car without putting the car in park. The car lurched forward, moving toward the highway, and mother jumped back into the driver's seat and stopped the car. Father then took the child out of mother's vehicle and took her with him.

## II. ANALYSIS

> When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences. That principle requires us to "'discard the evidence'" of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial.

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citations omitted) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). In our review, we are bound by the factual findings of the trial court, and "a trial court's judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it." Reece v. Reece, 22 Va. App. 368, 372, 470 S.E.2d 148, 151 (1996). In this case, we note that, although father prevailed in obtaining the protective order, we consider the evidence in the light most favorable to appellee, mother, because she prevailed on the issue in the only assignment of error

---

[4] Mother did not testify about this car accident or testify as to whether the child was in the car at the time of the accident.

- 4 -

before us – the circuit court's decision not to include the child in the protective order that it issued.

The statute dealing with such protective orders authorizes courts to issue protective orders in order to protect the health and safety of the petitioner and family or household members of the petitioner. Code § 16.1-279.1. In this case, the circuit court found that both parties had "substantial credibility issues." In making its ruling, the circuit court noted that father had a corroborating witness and noted mother's "erratic behavior, her emotional outburst, the vitriol that she shows against [father]." Ultimately, the circuit court found these factors "pushe[d] the [father] barely over" the threshold required for him to obtain a protective order, emphasizing that a preponderance of the evidence standard is "as if you're talking 50.01 percent to 49.99 percent." However, the court also stated that it had not heard any evidence to lead it to believe the child should be included in the protective order.

Considering the evidence in the light most favorable to mother, as we must because she prevailed below on this issue now on appeal, there is very little in the record to establish a threat by mother to the child. A statement by mother that she thought of burning father's house down with him and the child in it would, of course, be grounds for concern for the safety of the child (as well as the safety of father). However, mother denied that she made that statement, and because, as noted *supra*, we must discard on appeal the evidence of appellant which conflicts with that of appellee, we cannot assume otherwise on appeal because we are not the factfinder. While plenty of testimony was provided concerning the hostility of mother towards father, aside from the denied allegation concerning her threat to burn down father's house, father makes no other allegation that is in the record that demonstrates hostility on the part of mother towards her child since she was born – beyond the hostility that mother has already shown towards father. Even though mother may be a poor driver or may exhibit poor judgment and hostility in her

- 5 -

interactions with father, we cannot say that the circuit court's decision not to include the child in the protective order was plainly wrong.

Finally, appellee requests an award of attorney's fees incurred on appeal. Considering the record before us in its entirety, we decline to award attorney's fees on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

### III. CONCLUSION

In short, on appeal, we must consider the evidence in the light most favorable to mother as the prevailing party below on the issue now before us. While most of the testimony presented to the circuit court concerned the volatile relationship and interactions between father and mother, there was very little evidence presented of any animosity by mother directly toward their daughter. The circuit court, as factfinder, found that mother's "erratic behavior, her emotional outburst, [and] the vitriol that she shows against [father]" just barely merited that father have a protective order against her. At the same time, however, the circuit court found that both parties lacked credibility and that there was not enough evidence to also include the child in the protective order. Because we find that the circuit court's decision not to include the child in the protective order was not plainly wrong or without evidence to support it, we affirm the decision of the circuit court.

Affirmed.