COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Russell and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

EXANDREA S. OWEN

MEMORANDUM OPINION[*] BY
v.      Record No. 0997-19-2          JUDGE JEAN HARRISON CLEMENTS
DECEMBER 17, 2019
CHRISTOPHER E. OWEN

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

David C. Reinhardt (Bender Law Group, PLLC, on briefs), for
appellant.

Norman A. Thomas (Norman A. Thomas, PLLC, on brief), for
appellee.


Appellant, Exandrea Owen[1] (wife), appeals the ruling of the circuit court that reduced her

spousal support payment from appellee, Christopher Owen (husband).[2]  Finding that the court

did not err in its ruling, we affirm.

BACKGROUND[3]

The parties were married in May 1994 and divorced in October 2013.  The final decree

incorporated a property settlement agreement, which provided that husband would pay wife

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant's current name is Exandrea Nickel.

[2] While referring to the parties as "former husband" and "former wife" would be more accurate, for ease of reference in this memorandum opinion, we refer to them simply as "husband" and "wife."

[3] We view the evidence in the light most favorable to husband, the party who prevailed at trial, granting the evidence "the benefit of any reasonable inferences."  Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

spousal support of $6,000 per month for one year and $5,000 per month for nine years, ending

August 30, 2023, but the obligation would terminate if either party died or wife remarried. The

agreement provided that it could be modified if husband's income was reduced by more than

twenty-five percent through no fault of his own and used his 2012 yearly income of $199,000 as

a baseline. In March 2015, the parties amended the agreement to remove the provision that

support would end upon wife's remarriage,[4] and wife remarried in August 2016. In September

2016, the trial court entered an order ratifying and incorporating the amendment into the final

decree of divorce. The order set husband's baseline income for modification at his 2015 annual

income, which was $223,524. All of the other provisions of the agreement remained in effect.

Husband learned in April 2017 that his employment as president of Nordstrom Bank

would end in December 2017, and he stopped paying spousal support in November 2017.

Husband then lived in Arizona with his new wife, who was a realtor. Husband obtained his real

estate license but decided in September 2018 to look for jobs in the banking industry. However,

his efforts to find employment were not successful and he resumed his real estate career.

In September 2018, wife sought a show cause order based on husband's failure to pay

spousal support as ordered. Husband filed a motion to modify his payment. The parties agreed

that a vocational expert, employed by wife, would evaluate husband to determine his earning

capacity.

The trial court held an *ore tenus* hearing on December 3, 2018. The court found that

husband had willfully failed to pay the spousal support due wife but continued the case to allow

him to purge the contempt by paying the arrearage in full, plus interest, by April 22, 2019. The

parties agreed that the amount owed as of September 30, 2018, was $53,875.

---

[4] The amended agreement also provided for a change in custody of the parties' younger son, but the proposed change did not occur.

The trial court found that husband had shown that his income had been reduced to the level at which the parties' agreement permitted him to seek a modification of the spousal support payment. Wife argued that the terms of the agreement required the court to consider only the reduction in husband's income and modify the support amount proportionally and thus her current financial circumstances were irrelevant. Husband contended that the court could consider the factors set out in Code §§ 20-107.1(E) and 20-109(F). The court ruled that the plain language of the agreement did not limit the court to basing a modification only on the percentage of the reduction in husband's income and that wife's income and assets were relevant.

Husband testified that his earnings from his real estate business for 2018 were approximately $35,000. He said that he had applied for positions in the banking industry but had not received any employment offers. He said that he had a substantial credit card debt and owed $10,000 to the Internal Revenue Service. The monthly deficit between his income and expenses was about $5,600. Husband said that he had $70,000 equity in a rental property in Phoenix, Arizona. He estimated that the current value of his retirement account was $120,000 – $129,000.

Wife testified that she was employed at a base salary of $60,000 per year and also received a bonus of varying amounts. She said that she owned three investment properties valued at about $1.3 million and had $25,000 in savings and $47,000 in two retirement accounts. She said that she and her current husband kept their finances separate but acknowledged that their 2016 joint tax return showed their annual income as $338,000. She also said that her husband paid for her health insurance and their shared living expenses such as rent and utilities. Wife had listed her monthly expenses as about $9,400, but she admitted on cross-examination that she actually had spent an average of $4,000 per month for the several months preceding the hearing.

The vocational expert testified that he had interviewed husband on October 29, 2018. Based on husband's education and experience, the expert determined that husband was "very qualified to work in the banking industry" and was "underemployed" as a real estate agent because his earning capacity in a banking job in the Phoenix, Arizona area was $100,000 – $150,000. The expert opined that husband could earn $200,000 – $250,000 if he were willing to relocate. Husband was not willing to move because the terms of his spouse's custody agreement with her ex-husband required her to stay in Arizona. The expert said that husband's efforts to find another banking job had been "minimal to poor," and he suggested ways in which husband could find a banking job. However, the expert said that husband would not be underemployed if he earned $100,000. The court continued the case to review husband's efforts to find employment.

At the next hearing on April 22, 2019, husband testified that he had sold his rental property to pay the arrearage owed to wife and had applied for five jobs related to his previous work in banking. He was offered, but declined, a job at a salary of $50,000 – $55,000 per year as a funeral consultant with his father's-in-law mortuary. He said that he had worked with his present wife to improve their real estate business and anticipated earning "around $100,000" in 2019.

The trial court concluded that husband's earning capacity was $100,000 and that he was not voluntarily underemployed. The court determined that wife's annual income was $64,000. The court found that neither party was "living a totally extravagant lifestyle." The court, "considering all of the evidence and the current state of the law," reduced the amount of spousal support to $750 a month beginning November 1, 2018, for an indeterminate period. The court ordered husband to pay wife $4,500, the accrued arrearage under the new order, within thirty days. The court also ordered husband to pay wife for the cost of the vocational expert and

$5,000 for wife's attorney's fees. Wife filed a motion for reconsideration, which the court denied.

Wife's appeal raises six assignments of error, which may be summarized as the court misinterpreted the parties' agreement in reducing the amount of support (assignments of error I and II) and abused its discretion in setting the new amount (assignments of error III, IV, V, and VI).

ANALYSIS

"The object of spousal support is to 'provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay.'" Dailey v. Dailey, 59 Va. App. 734, 743 (2012) (quoting Blank v. Blank, 10 Va. App. 1, 4 (1990)). Further, the parties' "comparative needs and capacities change as circumstances change" and "spousal support awards must be determined in light of contemporary circumstances and . . . redetermined [if necessary] in light of new circumstances." Blank, 10 Va. App. at 4 (quoting Jacobs v. Jacobs, 219 Va. 993, 995 (1979)).

Code § 20-109(A) provides that either party may petition the court to "increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper." Code § 20-109(B) states that the court may consider modifying "an award of spousal support for a defined duration upon petition of either party" and, having found "a material change in circumstances of the parties," may change the amount of support after considering the factors set forth in Code § 20-107.1(E). However, Code § 20-109(C) "expressly limits the court's authority to modify an agreed upon spousal support award according to the terms of a stipulation or contract signed by the parties." Blackburn v. Michael, 30 Va. App. 95, 100 (1999). The parties

"may bind themselves by contract to pay a specified amount of spousal support and may specify the extent to which a court may modify a spousal support award." Id.

Marital agreements "are contracts subject to the rules of construction applicable to contracts generally." Pysell v. Keck, 263 Va. 457, 460 (2002). Where the terms of the contract are unambiguous, a court must "adhere to the plain meaning of [the contract's] stated terms" and "'cannot read into [the contract] language which will add to or take away from the meaning of the words already contained therein.'" Southerland v. Estate of Southerland, 249 Va. 584, 588, 590 (1995) (quoting Wilson v. Holyfield, 227 Va. 184, 187 (1984)); accord Dailey, 59 Va. App. at 739. "In reviewing the [marital] agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Smith v. Smith, 15 Va. App. 371, 374 (1992) (quoting Layne v. Henderson, 232 Va. 332, 337-38 (1986)). This Court reviews the trial court's interpretation of the agreement de novo. Jones v. Gates, 68 Va. App. 100, 105 (2017).

Wife argues that the terms of the agreement required the trial court to consider only the reduction in husband's income, without considering her income, assets, and resources, and the new support amount was not commensurate with the decrease in husband's income.

We find, however, that the plain language of the agreement does not support wife's interpretation. Paragraph 25(a) of the agreement lists the factors that the parties considered in determining the amount of wife's spousal support award, and these factors track the language of Code § 20-107.1(E). Paragraph 25(c) sets out the payment amount and references consideration of the factors listed in paragraph 25(a), along with wife's "reasonable requirements" and "her own ability to provide for her own support and maintenance." Paragraph 25(d) states that "spousal support is subject to modification by agreement or court of competent jurisdiction."

We do not interpret the agreement as limiting the trial court to consider only husband's reduced income when determining whether to modify the support amount.

Code § 20-109(G) states that "in any action for modification" of a spousal support award, once the court "finds that there has been a material change in circumstances, the court may consider the factors set forth" in Code §§ 20-107.1(E) and 20-109(F) in determining whether the support amount should be modified. The factors listed in Code § 20-107.1(E) include the "earning capacity" and "present employment opportunities" of the parties. Code § 20-107.1(E)(7) and (9). Under Code § 20-109(F)(6), the court may consider "[t]he assets or property interests of each of the parties during the period from the date of the support order and up to the date of the hearing on modification or termination." Thus, we find that the trial court did not err in finding that wife's financial circumstances were relevant to the modification proceeding.

A party seeking to modify a spousal support payment must show by a preponderance of the evidence that a "material change in circumstances" has occurred that "warrants a modification of support." Furr v. Furr, 13 Va. App. 479, 481 (1992). The parties' agreement stated that the support amount could be modified if husband's income was reduced by more than twenty-five percent of a specified baseline income through no fault of his own. When the agreement was modified in 2016, the baseline was $223,524. Husband lost his job in December 2017 through no fault of his own when the bank of which he had been president was sold. Husband then started a career in real estate, and his anticipated income for 2019 was $100,000, a reduction of more than fifty percent. Husband thus established that his circumstances had changed materially. See Doering v. Doering, 54 Va. App. 152, 170-72 (2009) (finding that "significant decrease in husband's income" was a material change in circumstances); Reece v.

Reece, 22 Va. App. 368, 373 (1996) (finding that husband's loss of employment when his employer eliminated his position was a material change in circumstances).

Husband also had to show that the change in his income warranted modifying the support payment. See Dailey, 59 Va. App. at 742 (holding that the party requesting modification of support must prove both a material change in circumstances and that the change warrants modification); Reece, 22 Va. App. at 373 (same). To this end, he had to show that the reduction was not due to his own voluntary actions. See Edwards v. Lowry, 232 Va. 110, 112-13 (1986); Reece, 22 Va. App. at 373. Husband had no control over losing his job when the bank he worked for was sold. See Reece, 22 Va. App. at 373 (holding that husband did not voluntarily leave his job because his employer eliminated the position). Wife contends, however, that husband was voluntarily underemployed and had not made a good faith effort to achieve his full earning capacity because he did not pursue another job in the banking industry, but, instead, became a real estate agent, working with his new spouse, who was a realtor. Husband testified that he did not apply for banking jobs outside of the Phoenix, Arizona area for family reasons and his efforts to find a job in the Phoenix area had not been successful. The fact that husband did not want to relocate did not mandate a finding that he was voluntarily underemployed. See id. at 375 (declining to hold that "a supporting spouse *always* becomes voluntarily underemployed or unemployed when he or she refuses to accept an offer of comparable employment in another geographic location").

Further, the vocational expert who evaluated husband at wife's behest testified that husband could expect a salary of at least $100,000 in a banking job and would not be considered underemployed at that salary. Husband testified at the April 22, 2019 hearing that he had worked with his present spouse to increase their business and expected to earn approximately $100,000 in 2019.

The trial court considered this evidence in finding that husband was not voluntarily underemployed. Whether a person is voluntarily underemployed is a factual determination. See Blackburn, 30 Va. App. at 102; see also Layman v. Layman, 62 Va. App. 134, 137 (2013) (stating that a trial court determines the weight to be given to a witness' testimony and may accept or reject the testimony). We hold that the trial court did not abuse its discretion in finding that modification of the support payment was warranted. See Reece, 22 Va. App. at 373 ("A trial court may use its broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support.").

We also hold that the trial court did not abuse its discretion in setting the new amount of support. We reject wife's claim that the agreement required the trial court to apply a proportionality formula in setting the amount because nothing in the agreement's language supports wife's claim. Absent express proportionality language, interpreting the agreement as wife asks would be inconsistent with the statutory provisions in Code § 20-109(B), (F), and (G). The evidence before the court was that husband's earning capacity was $100,000, he had substantial debt and expenses, he had sold property that he owned to pay the arrearage owed to wife, and he was providing some financial assistance to the parties' two adult sons.[5] Since the divorce, wife had become employed at a yearly salary of $64,000 and had acquired substantial savings and real estate holdings; in addition, she had remarried and was enjoying a greater standard of living than she had while married to husband.

Where a trial court's decision is based on an *ore tenus* hearing, this Court will uphold the ruling unless it is plainly wrong or lacks supporting evidence in the record. See, e.g., Furr, 13 Va. App. at 482. This Court views the record, including the facts and all reasonable inferences

---

[5] At the time of the April 22, 2019 hearing, one son was twenty-three years old and the other son was nineteen years old.

from them, in the light most favorable to husband, the party who prevailed in the trial court. See, e.g., Monds v. Monds, 68 Va. App. 674, 677 (2018). "Decisions concerning [spousal] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Wright v. Wright, 61 Va. App. 432, 446 (2013) (quoting Calvert v. Calvert, 18 Va. App. 781, 784 (1994)). The court's ruling setting the spousal support payment at $750 per month was neither plainly wrong nor lacked supporting evidence. Accordingly, we find no basis to reverse the trial court.

Attorney's Fees

The decision to award attorney's fees and costs incurred on appeal is to be determined by the appellate court. See Rule 5A:30; O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). The Court's decision is not limited to whether a party prevailed on appeal, but considers whether the issue raised was "frivolous" and the equities of the case. See Wright, 61 Va. App. at 470 (quoting O'Loughlin, 23 Va. App. at 695). Accordingly, having reviewed the record on appeal, we decline to award attorney's fees and costs to either party.

CONCLUSION

We hold that the trial court did not misinterpret the parties' spousal support agreement and did not abuse its discretion in reducing the amount of the spousal support payment. We decline to award attorney's fees and costs to either party.

Affirmed.