COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


GEORGIA MICHELE HATLOY

v.        Record No. 3306-02-4

MATTHEW DAVID HATLOY

OPINION BY
JUDGE ROBERT P. FRANK
NOVEMBER 12, 2003


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

Thomas P. Sotelo (Keegan & Sotelo, on brief), for appellant.

No brief or argument for appellee.


Georgia M. Hatloy (mother) appeals the trial court's decision to reduce child support payments owed by Matthew D. Hatloy (father). She argues the court did not impute a proper level of income to father.[1] For the reasons stated, we affirm the trial court.

BACKGROUND

On March 6, 2001, the parties were divorced, and father was ordered to pay $2,308 per month for child support. On January 17, 2002, father filed a Motion for Reduction of Child Support, contending he was involuntarily terminated from his employment at America OnLine (AOL) and had no income, despite his efforts to obtain suitable employment.[2]

---

[1] Although mother endorsed the final order, "Seen and Agreed," and filed objections more than twenty-one days after entry of the final order, see Rule 1:1, she preserved the issue for appeal by arguing throughout the hearing that income should be imputed to father based on his previous salary at America OnLine. See Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167-68 (1991) (noting that objections made during a hearing can preserve an issue for appeal).

[2] Mother subsequently filed a Rule to Show Cause for father's failure to pay child support. This rule is not a subject of this appeal.

At the hearing on the motion for reduction of child support, father testified he was terminated from his employment with AOL in November 2001. At the time of his termination, father earned $55,070 per year plus stock options, for an annual salary of $117,425.75. After his termination, he received severance pay and compensation for his unused vacation time. He also cashed in his stock options and received an inheritance of $10,000. Father paid, at most, $2,500 in child support after his termination from AOL.

Father is a high school graduate, but does not have a college degree. Prior to his AOL employment, father had numerous jobs in the "hospitality industry." At a Ramada Inn, he was a "front-office manager," earning $8.50 per hour. He also worked as a "bellman, customer service" at a Holiday Inn, earning $5.00 per hour. He once worked at a Home Depot in the customer service department, earning $9.50 per hour.

Upon his termination from AOL, father traveled to a number of states seeking employment in the "high-tech industry." His quest was futile. Father testified, "And I have a stack of rejection letters from employers in Chicago, St. Louis, Washington. I mean, I really did make an extreme effort and spent about every dollar I had in savings trying to secure future employment." He indicated, "Right now, the high-tech field is still extremely volatile, and there are no jobs, or the ones that I am competing for they really want a college degree, and usually it is at the masters level."

At the time of the hearing, father was an employee/partner at Pine Creek Pub, a seasonal recreational resort. He characterized this position as "returning to an industry that I have the training to be successful at." He claimed the work was "something I have always wanted to do." He explained his salary would be based on "our profits."

The pub lost money during the previous summer, consequently, father drew no salary. However, he indicated he soon would begin drawing a salary of $1,000 per month. Father further testified he would begin earning an additional $500 to $600 per month as a "guide" at the resort.

On cross-examination, father admitted he had not sought employment in the "hospitality industry," other than one unsuccessful effort at a Holiday Inn and the successful effort with Pine Creek Pub. Since he began his relationship with the pub, father had not sought any other employment.

During her argument opposing father's motion for reduced child support, mother conceded that a material change in circumstances had occurred and that father lost his job "through no fault of his own." However, mother contended father had not used good faith efforts to find suitable employment, and she asked the trial court to impute to father the amount of his base salary at AOL, i.e., $55,070.

The trial court imputed to father a gross income of $1,600 per month and reduced his monthly child support payment to $921, effective July 1, 2002. This appeal ensued.

### ANALYSIS

Mother contends father failed to meet his burden to show "that he was earning as much income as is reasonable under the circumstances" and that the trial court erred in not imputing $55,070 of income to father. Essentially, mother contends he is "voluntarily underemployed."

> "Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (citing Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

- 3 -

This case arose after the original divorce and child support order was entered. The standard of proof and burdens in such circumstances are clear.

> "Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award. The moving party has the burden of proving a material change by a preponderance of the evidence." Crabtree v. Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993). "[A] party seeking a reduction in support payments has additional burdens: '[H]e must make a full and clear disclosure relating to his ability to pay. *He must also show that his lack of ability to pay is not due to his own voluntary act* or because of his neglect.'" Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (emphasis added) (quoting Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975)). Thus, in order to prove a material change in circumstances that justifies a reduction in support, a parent "must establish that he is not 'voluntarily unemployed or voluntarily under employed.'" Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting Code § 20-108.1(B)(3)).

Virginia Dep't of Soc. Servs. v. Ewing, 22 Va. App. 466, 470, 470 S.E.2d 608, 610 (1996).

Since mother concedes that a material change occurred in father's financial circumstances and that he was terminated at AOL through no fault of his own, we must determine whether father met his burden to establish that he was not "voluntarily underemployed."[3]

---

[3] Although the word, "imputation," is used in this context, the burden of proof remains on husband, not on wife who is arguing for imputation, unlike cases asking for imputed income at the time of the initial award. Here, the trial court had previously set an amount of support, based on husband's then-salary from AOL. Thus, wife's request for imputation is basically an argument in support of continuing the initial award. Husband, on the other hand, is asking the court to reduce the previously set support amount. In meeting his burden on the motion to reduce the awarded support, husband must prove, among other issues, that he should not have his previous income from AOL imputed to him. Compare Mansfield v. Taylor, 24 Va. App. 108, 480 S.E.2d 752 (1997) (finding a trial court erred in granting a father's motion to reduce the child support award and failing to impute income to him), and Niemiec v. Virginia Dep't of Soc. Servs., 27 Va. App. 446, 499 S.E.2d 576 (1998) (explaining the burden of proof when a party asks a trial court to impute income at the time of an initial award of child support).

The trial court found "a lack of effort" by father, who had "[a] lot of cash [pass] through [his] hands" after he was terminated by AOL. The court imputed income of $1,600 per month or $19,200 per year, retroactive to July 1, 2002. While the trial court did not articulate how it arrived at this amount, the record clearly indicates the trial court accepted husband's testimony that he received no income from the pub, but expected to begin earning $1,000 per month from the resort and an additional $600 per month from his work as a "guide." The trial court apparently also accepted father's testimony that, because of his educational background, he could not find employment in the "high-tech industry."

Mother did not refute father's testimony that no jobs were available in the "high-tech industry." She did not present evidence that work in the "hospitality industry" would pay father more than $1,600 per month. The only evidence on these issues was presented in father's testimony. He testified he had earned $10,400 annually from Holiday Inn, $17,860 annually from Ramada, and $19,760 annually from Home Depot. Assuming a job was available at Home Depot, father's current imputed pay is comparable.

Mother attacks father's credibility by pointing to his failure to present evidence documenting his efforts to seek employment and his inconsistent testimony at the hearing. She argues he never produced the "stack of rejection letters" that he claimed he received.[4] However, her arguments ignore the fact that father's testimony was evidence before the fact finder. Therefore, while these arguments go to the weight of the evidence, they do not suggest a complete lack of evidence to support the trial court's decision. It is well established that the credibility of witnesses and the weight accorded their testimony are matters solely within the purview of the trial court, and its findings will be reversed on appeal only if "plainly wrong or

---

[4] At one point father testified he had the stack of rejection letters at home, then on cross-examination he said he believed he threw the letters away.

without evidence to support them." <u>Wyatt v. Virginia Dep't of Soc. Servs.</u>, 11 Va. App. 225, 230, 397 S.E.2d 412, 415 (1990).

Here, the trial court accepted father's explanation of his efforts to seek comparable employment in the "high-tech industry" and of his income at the pub. We find no error in the trial court's acceptance of father's testimony and its imputation of $1,600 per month in income, rather than the amount previously earned from AOL.

We conclude the evidence supports the trial court's decision to reduce the award of child support.

<u>Affirmed.</u>