COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Kelsey
Argued at Richmond, Virginia

RICHARD A. DICKOVER

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1843-05-2                  JUDGE D. ARTHUR KELSEY
                                                    MAY 16, 2006
SHARON L. SEATON

                   FROM THE CIRCUIT COURT OF HANOVER COUNTY
                            John Richard Alderman, Judge

             Susan C. Armstrong (Brent M. Timberlake; Troutman
             Sanders, LLP, on briefs), for appellant.

             T. Michael Blanks, Jr. (John R. McNeer; Marchant
             Thurston Honey & Blanks, LLP, on brief), for appellee.


        Richard A. Dickover appeals a denial of his motion to modify a spousal support award

based upon changed circumstances.  Limiting our review to the specific grounds of error asserted

by Dickover, we find no basis for overturning the trial court's decision as an abuse of discretion.

                                           I.

        "When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle

requires us to discard the evidence of the appellant which conflicts, either directly or

inferentially, with the evidence presented by the appellee at trial."  Petry v. Petry, 41 Va. App.

782, 786, 589 S.E.2d 458, 460 (2003) (citations omitted).

        In 1997, a final divorce decree ended the nearly 18-year marriage between Richard A.

Dickover and Sharon L. Seaton.  At that time, Dickover earned $84,000 a year as a salesman for

───────────────────

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Caere Corporation, selling digital scanners. Seaton earned $27,000 a year as a schoolteacher. The circuit court ordered Dickover to pay Seaton $1,200 per month in spousal support.

In 1998, Dickover lost his job with Caere Corporation during a reduction-in-force layoff. He took a new job with Par Technologies as a software salesman earning $60,000 a year plus a 1% commission. Dickover filed a motion to reduce his support obligation due to his reduced income. In July 1999, the circuit court denied the motion on the ground that severance benefits from Caere Corporation increased Dickover's total compensation to a level still justifying the $1,200 monthly support payment to Seaton. The court, however, continued the matter until September 1999 — the approximate time in which the severance payments would likely end. Without the severance payments, the court's order stated, there would be a "substantial change in condition" due to the reduced income that might warrant a modification of the support award. The order further noted that "some retroactive reduction" might be possible if the severance payments ended prior to the hearing.

Within weeks of the July 1999 hearing, Dickover lost his job at Par Technologies due to a "total and complete lack of performance." "[I]t appears that he didn't do anything. He didn't make sales calls, face-to-face or on the phone. It's fairly apparent from the documents . . . that he went to work and just kind of sat there." He then spent several months searching for new employment and earning sporadic income from odd jobs. He remained in this situation until September 1999 for the hearing on his continued motion to modify. The court apparently received evidence from Dickover at this hearing, though no transcript of this hearing appears in the record and no court order followed the hearing.

The court took up the matter again in December 1999. At that hearing, Dickover still had not found a new job. He conceded that the loss of his position with Par Technologies might justify an imputation of $60,000 a year, but argued that reduced figure was exactly the

"substantial change in condition" found to exist under the court's earlier order once the severance benefits from Caere Corporation came to an end. The court disagreed, finding that if Dickover had "expended the slightest effort at the second job, . . . he would have made the $60,000 base and he would have had significant commission income to go on top of it. I think the jobs are functionally equivalent." Based upon that imputation, the court found no basis for modifying the $1,200 monthly support obligation. The court entered an order memorializing this finding in January 2000.

Months later, in May 2000, Dickover filed a motion to reconsider asserting that newly discovered evidence would prove that the 1% commission could not generate enough income to bring the imputed salary from $60,000 to the previous $84,000 figures initially used to calculate the original spousal support award. Seaton responded by pointing out that the January 2000 order had become final under Rule 1:1 and could not be reconsidered. The circuit court agreed and summarily denied the motion.

In September 2000, Dickover filed a new motion to modify support. At the evidentiary hearing in December 2000, Dickover testified that his previous job at Par Technologies (earning $60,000 plus 1% commission) had been eliminated when the division he had worked for went out of business in 2000. He explained that both of his previous employers, Caere Corporation and the Par Technologies division, were part of the "automatic identification business." It is a "very small" industry, Dickover said, and he had contacted "every company" he was aware of in that field.

Not able to find work in his "chosen field," Dickover accepted a position as the Northeast Regional Sales Manager for AutoGas Systems covering the northeastern United States. The Northeast Region consisted of 14 states and one Canadian province. The new job paid an annual salary of $50,000 (including his car allowance) plus a commission of 1% to 5% on a sales quota

of $3,000,000, which could produce commission income between $30,000 (1%) and $150,000 (5%) annually. Seaton argued that the income from AutoGas Systems could be roughly equated to Dickover's earlier jobs, and thus, no reduction in spousal support should be ordered.

In response, Dickover's counsel explained the "change here" is that Dickover "is no longer able to work in his chosen field." Dickover, counsel continued, had talked to "every company in the field about getting employment within that field." Unable to find comparable employment, counsel argued, Dickover accepted the job at AutoGas Systems. The income estimate of that job, counsel concluded, should include only the $50,000 base salary and not any consideration of any commission income. The circuit court disagreed and denied Dickover's motion. Dickover never appealed this ruling.

In March 2002, Dickover filed a series of *pro se* motions, including a motion for the "Reduction/Cessation of Spousal Support." The trial judge denied this motion, ruling: "I don't find that there is a change in circumstance sufficient to persuade me that I ought to change the amount of support." The trial judge added that he would "reconsider" the matter only after another year had passed. At the time of this ruling, Dickover was still employed with AutoGas Systems under the same salary and commission structure he had previously described.

In July 2003, Dickover filed another motion to modify the spousal support award. The court took evidence on the motion in October 2003. At that time, Dickover testified that he had voluntarily left his position with AutoGas Systems in September 2002 because "it was time to move on" given his dissatisfaction with management and his unfulfilled expectations of income potential. He left, however, only after securing what he thought was a better offer from another company. The prospective new employer, Dickover claimed, later reneged on his job offer. Dickover then turned to home improvement contracting and started a sole proprietorship to engage in that business. As of the date of the hearing, the business had yet to turn a profit.

Seaton argued that Dickover had shown no change of circumstances supporting a reduction or termination of his support obligations. He had instead shown just the opposite: "And so he was making at AutoGas," Seaton argued, "sufficient income to keep up the support payments as . . . this Court has ruled in the past." Having voluntarily left that employ, Seaton reasoned, the only change in circumstances was the product of Dickover's imprudent decision. Thus no grounds could be shown to reduce the award, Seaton concluded. On the motion to reduce or terminate the support award, the court decided to "take the matter under advisement" until Dickover made a substantial payment toward his outstanding support arrearages and paid Seaton's counsel court-ordered attorney fees.

The matter came back before the court for an evidentiary hearing in February 2005, after Dickover had made what the court concluded to be a substantial payment on arrearages. At the start of the hearing, Seaton objected on *res judicata* grounds to Dickover's request to put on additional evidence in support of his 2003 motion to reduce or terminate support. The trial court's prior rulings, Seaton argued, were simply being relitigated by Dickover. The trial court overruled the objection and opened the evidentiary record to additional testimony.

Dickover testified that he left the contracting business and took a job selling auto parts and tires at a flat salary of $40,000 a year. He also alleged to have made an exhaustive search for employment at a higher wage, but failed to find any position within his qualifications. His particular expertise, Dickover said, was as a salesman in the "automatic identification business" selling optical scanners and bar code recognition devices. He explained in detail how the sales side of that industry had shrunk over the years, primarily due to the direct marketing of such products over the Internet. Dickover added that the decline has steadily continued from the time of his release from Caere Corporation until the present. Dickover also presented the *de bene esse*

testimony of a businessman in that industry who corroborated Dickover's assertions about the declining sales industry in the "automatic identification business."

At that same hearing, Seaton said her annual income as a second-grade teacher had risen to about $39,000 due to yearly adjustments. During the summer, she attended recertification classes, opened and closed her classroom, and took vacation time. She also testified that her school considered it a potential "conflict of interest" to tutor children after hours during the school year, and she knew of no teachers doing so. In response, Dickover called as a witness another schoolteacher who said that opportunities for tutoring after hours and during the summer were available in Seaton's school district.

After the hearing, the trial court issued an order denying Dickover's motion to reduce or terminate support. The court held:

> The court finds that [Dickover's] financial position has declined since the last order of this Court. The Court further finds that [Seaton's] financial circumstances have improved somewhat. The Court further finds that [Dickover] arranged his current fate by his actions in the past by not performing at past significant and adequately remunerative employment. The court also finds that [Dickover] has never achieved what seems to be appropriate employment, has fallen significantly behind in his obligations and has not overcome, with an appropriate quantum of proof, the effect of his past conduct.

Dickover appeals this order to us, claiming it violated settled principles of support law and relied on factual assumptions unsupported by the evidentiary record.

## II.

A spousal support award, whether part of a divorce decree or a later award, remains subject to Rule 1:1 like any other final order of the circuit court. Under *res judicata* principles, an unappealed support order can be modified only upon a showing of changed circumstances. See Barton v. Barton, 31 Va. App. 175, 178, 522 S.E.2d 373, 374 (1999). A showing of changed circumstances, however, permits — but does not require — the trial court to exercise its

discretion to modify the support award.  See Blackburn v. Michael, 30 Va. App. 95, 103, 515 S.E.2d 780, 784 (1999).  The burden of proof remains at all times on the party seeking to modify the award to demonstrate by a preponderance of the evidence the propriety of the requested modification.  This burden involves not merely a showing of a change in circumstances, but proof that "this change warrants a modification of support."  Street v. Street, 25 Va. App. 380, 386, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted); Reece v. Reece, 22 Va. App. 368, 372-73, 470 S.E.2d 148, 151 (1996).

In addition, when the payor spouse seeks a modification, he "must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect."  Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2 259, 261 (1986) (citation omitted).  To prove a change in circumstances justifying a reduction in support, the payor spouse "must establish that he is not 'voluntarily unemployed or voluntarily under employed.'"  Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting Code § 20-108.1(B)(3)); see also Virginia Dep't of Soc. Servs. v. Ewing, 22 Va. App. 466, 470, 470 S.E.2d 608, 610 (1996).

A party seeking modification of a prior support award resting upon a finding of imputed income must *disprove* the existence of factual grounds warranting a continuation of the imputation.  See Hatloy v. Hatloy, 41 Va. App. 667, 672 n.3, 588 S.E.2d 389, 391 n.3 (2003).  Though bearing the initial burden of demonstrating the need to impute income, see, e.g., Mir v. Mir, 39 Va. App. 119, 128, 571 S.E.2d 299, 304 (2002), the party asserting imputation need not reprove its continued legitimacy each time an opponent calls it into question by filing a motion to modify, Hatloy, 41 Va. App. at 672 n.3, 588 S.E.2d at 391 n.3.

The decision to "impute" income is merely a means of estimating the true "earning capacity" of a litigant.  Bruemmer v. Bruemmer, 46 Va. App. 205, 209, 616 S.E.2d 740, 742 (2005) (citation omitted).  The imputation concept rests on "the principle that a spouse should

not be allowed to choose a low paying position that penalizes the other spouse" receiving support. O'Hara v. O'Hara, 45 Va. App. 788, 797-98, 613 S.E.2d 859, 864 (2005). Imputation can result from a payor spouse's willful refusal either to get a job or to find a better paying one. The concept also applies even when the spouse makes a "good faith" decision to take a better paying job, Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (*en banc*); see also Street v. Street, 24 Va. App. 14, 21-22, 480 S.E.2d 118, 122 (1997), but the new job ends up paying less than the former position, Antonelli, 242 Va. at 156, 409 S.E.2d at 119 (holding that a "bona fide and reasonable business undertaking," though mistaken in hindsight, does not preclude imputation).

Unless the trial judge misapplies the legal standard or misallocates the burden of proof, the question whether "a person is voluntarily unemployed or underemployed is a factual determination," O'Hara, 45 Va. App. at 798, 613 S.E.2d at 864 (citation omitted), one firmly placed "within the sound discretion of the trial court," Sargent v. Sargent, 20 Va. App. 694, 704, 460 S.E.2d 596, 601 (1995). Employing the most deferential standard of appellate review, we reverse such findings "only if plainly wrong or not supported by credible evidence." Budnick v. Budnick, 42 Va. App. 823, 841, 595 S.E.2d 50, 59 (2004).

III.

On appeal, Dickover presents three questions. The first asserts that the trial court erred "in continuing its 1999 factual finding that Mr. Dickover was underemployed when the uncontroverted evidence was that he was making the highest salary available to him." Appellant's Brief at 8. Dickover's second question is a corollary of the first: "Did the trial court's finding that (i) 'Mr. Dickover's financial position has declined since the last order of this Court' and that (ii) 'Ms. Seaton's financial circumstances have improved somewhat' require the court to consider whether the parties' current financial circumstances warranted a change in

- 8 -

support under Virginia Code section 20-109?"  Id. at 9.  Dickover's third question presented

challenges the trial court's award of attorney fees to Seaton incurred in defense of his most

recent motion to reduce or terminate support.

### A.  QUESTIONS 1 & 2:  ERRONEOUSLY "CONTINUING" A 1999 FACTUAL FINDING AND REFUSING TO CONSIDER "CURRENT" CIRCUMSTANCES.

Dickover asserts the trial court's 2005 decision involved an arbitrary refusal to consider

the then-existing factual circumstances and instead treated the 1999 imputation decision as an

"eternal factual finding" that could never be reconsidered in light of changed circumstances.  Id.

at 3, 11.  We think this assertion unfairly characterizes the 2005 holding, the only decision before

us on appeal.

Nothing in the trial court's 2005 ruling suggests it treated the 1999 decision to impute

income to Dickover (as a result of being fired from Par Technologies) as an "eternal factual

finding" irrevocably binding the parties and the court for all time.  Had it been treated that way,

the trial court would not have overruled Seaton's *res judicata* objection and then held an

evidentiary hearing on the merits to consider the new circumstances existing at the time of the

2005 hearing.  The trial court's ruling specifically took into account Dickover's testimony that

his "financial position" had declined since "the last order of this Court."  Based on the evidence

before it, however, the trial court found that Dickover had not satisfied the "appropriate quantum

of proof" necessary to overcome the "effect of his past conduct."[1]

---

[1] The best interpretation of this ruling, Dickover concedes, is not that the court found no change in circumstances, but that "Dickover failed to present sufficient evidence warranting a modification of spousal support — *i.e.*, he failed 'to overcome, with an appropriate quantum of proof, the effect of his past conduct.'"  Appellant's Reply Br. at 4.  Understood this way, the court denied the motion not because of the absence of a change in circumstances, but rather a failure to prove that the "change warrants a modification of support."  Street, 25 Va. App. at 386, 488 S.E.2d at 668 (citation omitted); Reece, 22 Va. App. at 372-73, 470 S.E.2d at 151.

- 9 -

Dickover's most relevant "past conduct" was not his 1999 termination from Par Technologies — but, rather, his voluntary departure from AutoGas Systems in 2002, a job paying $50,000 annually plus commissions of 1% to 5% on a sales quota of $3,000,000. The trial court had earlier concluded, both in 2000 and 2002, the AutoGas Systems job provided sufficient income to justify maintaining the support award at the original level.

At the 2003 and 2005 evidentiary hearings, Dickover presented no evidence of the AutoGas Systems position being eliminated after his departure, as he had earlier said of the Caere Corporation and Par Technologies jobs. Nor did he provide any specific, much less persuasive, evidence justifying his assertion that "it was time to move on" from AutoGas Systems because he was not "making the money" he thought he should be making.

Given these evidentiary omissions, Seaton correctly argued that Dickover's voluntary departure from AutoGas Systems provided an independent basis for imputing "sufficient income" to continue the support payments, just as the trial court had "ruled in the past." It did not matter, Seaton pointed out, that Dickover claims he left AutoGas Systems with a reasonable expectation of later obtaining a better paying job. The issue is not the reasonableness of Dickover's risk assessment, but whether he or his ex-wife should bear the financial burden of it failing to come to pass as he predicted. See generally Antonelli, 242 Va. at 156, 409 S.E.2d at 119; Stubblebine, 22 Va. App. at 708, 473 S.E.2d at 74; Auman v. Auman, 21 Va. App. 275, 279, 464 S.E.2d 154, 156 (1995) (holding "a party is not free to make career decisions that disregard the needs of his dependents and his potential obligation to them").

Based upon the evidence before it, the trial court acted within its factfinding discretion to conclude that Dickover failed to prove by a preponderance of the evidence that the changes in the "automatic identification business" and the unavailability of sales positions in that declining industry precluded him from earning sufficient income to justify the spousal support award.

Dickover's evidence may have provided a basis for attacking the imputation to Dickover of his prior income from Caere Corporation or Par Technologies, both businesses within the "automatic identification business" market. But no specific evidence addressed the continuing availability of the voluntarily vacated position at AutoGas Systems, or the industry in which that company competed, or, for that matter, the availability of other similarly situated jobs that combined salary and commissions at the levels employed by AutoGas Systems.[2]

### B. QUESTION 3: AWARDING ATTORNEY FEES TO SEATON

Whether to award attorney fees "is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002)). "Because each case presents its own unique set of equities, principles of appellate review steer clear of inflexible rules and focus instead on 'reasonableness under all the circumstances.'" Kane, 41 Va. App. at 375, 571 S.E.2d at 354 (citation omitted). Among the equitable concerns a trial court may consider is whether "obstructive conduct" by either party compounded the costs of litigation. Smith v. Smith, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004); see also Kane, 41 Va. App. at 375, 585 S.E.2d at 354 (affirming trial court's attribution of blame for "protracted procedural contests, and petty discovery disputes").

---

[2] Having rejected Dickover's evidence concerning his own earning capacity, the remaining evidence of Seaton's incremental salary increases would not itself require the trial court to modify the spousal support order. See, e.g., Barrs v. Barrs, 45 Va. App. 500, 509, 612 S.E.2d 227, 231 (2005) (holding that "foreseeable" increases in income may be discounted by the factfinder as immaterial). As for summer employment, Seaton's testimony provided a rational basis for the trial judge, as factfinder, to decline any imputation of income to her during this period.

Since the entry of his 1997 divorce decree, Dickover has filed four unsuccessful motions to modify spousal support. There have been eighteen hearings in the trial court in some way related to the spousal support issue. Dickover has been represented by four different lawyers and has appeared *pro se* as well. The attorney fee award challenged on appeal compensated Seaton only for fees incurred in defending the most recent motion to reduce or terminate support. That motion, like this appeal, inadequately addressed the impact on the support award of Dickover's voluntary departure from AutoGas Systems. Instead, the motion focused on Dickover's prior layoff from Caere Corporation and firing from Par Technologies — both matters that had been overtaken by events. Under such circumstances, the trial court did not abuse its discretion in finding that the equities of this case favored an award of attorney fees to Seaton.

### IV.

With respect to the 2005 support award, the only order before us, we find no merit in either of the two objections raised by Dickover on appeal. Both rest on a misapprehension that the trial court ignored evidence of contemporaneous circumstances and arbitrarily carried forward an imputation decision made in 1999. Because the record does not support this assertion, we affirm.

We similarly affirm the trial court's award of attorney fees to Seaton.[3]

Affirmed.

---

[3] Seaton also requests from us an award of attorney fees on appeal. We decline to make an award of appellate fees in this case. Though we reject Dickover's arguments, we do not consider them "unreasonable" assertions under the unique circumstances of this case. See generally Petry v. Petry, 41 Va. App. 782, 796 n.7, 589 S.E.2d 458, 465 n.7 (2003) (citing O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)).