COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Clements and Senior Judge Coleman
Argued by teleconference


TOM A. BROADHEAD, JR.

                                                          OPINION BY
v.        Record No. 0396-07-2                   JUDGE ROBERT P. FRANK
                                                       JANUARY 29, 2008
ANNE E. BROADHEAD


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                              L. A. Harris, Jr., Judge

            Larry D. Diehl (Edward D. Barnes; Brandy M. Poss; Barnes &
            Diehl, P.C., on briefs), for appellant.

            Deanna D. Cook (Bremner, Janus, Cook & Stone, on brief), for
            appellee.


        Tom A. Broadhead, Jr., father, petitioned the trial court to reduce his child support

obligation to his former wife, Anne E. Broadhead, mother, based on a reduction in his earnings.

After an *ore tenus* hearing, the trial court determined that father was voluntarily underemployed,

comparing his current position and salary level to that he held at the time of the initial award.

Accordingly, the trial court imputed income to father.[1]  Based on its findings, the trial court

ordered a reduction in child support from $890 to $800 per month.  On appeal, father contends

that the trial court erred in finding that he was voluntarily underemployed and in imputing

income to him from the job he held at the time of the initial award.  Both parties request an

award of attorney's fees and costs associated with this appeal.  For the following reasons, we

reverse the decision of the trial court and remand for the trial court to determine whether father is

        [1] The trial court also imputed income to mother, finding that she was voluntarily
underemployed.  However, mother conceded this point at trial and does not appeal the trial
court's decision to impute income to her.  Thus, that issue is not before us on appeal.

voluntarily underemployed in his current position, in accordance with this opinion. Further, we decline to award attorney's fees and costs to either party.

BACKGROUND

Father and mother married in 1985 and had two children, one born in 1994 and one born in 1996. The trial court entered a final decree of divorce on April 3, 2001, and, pursuant to an agreement by the parties, ordered father to pay $1,800 per month in child support to mother.[2] Both parties shared physical and legal custody of the children.

On January 31, 2003, the parties amended their agreement as to child support, reducing the amount father paid to mother to $890 per month.[3] The parties never sought an order from the trial court reflecting this reduction; however, both parties abided by the new agreement for the next two years. During the instant proceedings in the trial court, mother maintained that, though the parties' 2003 agreement had never been entered as an order in court, she was bound by their agreement and did not seek any increase in the support amount.

In 2005, both parties filed motions seeking primary physical custody of the children, and mother also filed a motion seeking sole legal custody and seeking a change in support. On April 25, 2006, the trial court entered a consent decree resolving these issues, and the parties

---

[2] The final decree of divorce, in which mother was named as plaintiff and father as defendant, actually stated, "The amount of support to be paid *by the plaintiff to the defendant* for the support and maintenance of the children is $1,800.00 per month, that obligation already having begun, and is continuing each and every month thereafter until further order of this court." (Emphasis added).

This was clearly a clerical error by the trial court. Under the addendum to the parties' separation agreement, dated March 15, 2001, father had agreed to pay mother $1,800 per month. Indeed, father continued to pay $1,800 per month to mother for the two years following the entry of the final decree, at which time the parties reached a separate agreement as to the amount of support. In light of this treatment by the parties, we will assume for purposes of this opinion that the final decree ordered father to pay $1,800 per month in child support to mother.

[3] We note that the parties reached this agreement to reduce the amount of child support two months before father left his employment with Capital One.

maintained joint legal and joint physical custody of the children. The trial court also granted mother's motion to withdraw her petition to amend child support.

On May 24, 2006, father filed a motion to decrease child support. In response, on June 2, 2006, mother filed a motion to increase child support and a motion for wage assignment. The trial court heard evidence *ore tenus* on August 28, 2006.

Father testified that, at the time the final decree was entered, he was working for Capital One in Richmond in the corporate counsel department, as the assistant general counsel in charge of the business line groups. Father earned about $150,000 in salary, with a potential to earn large bonuses. Between his salary and annual bonus, father earned approximately $250,000 in 2001. Mother also worked at Capital One at that time, earning approximately $61,000 per year. Both father and mother resided in the Richmond area.

In 2002, Capital One transferred father to a position heading the government regulatory regulation group, which operated as the lobbying arm for the company. Father had requested to retain his original position, as he did not have the "training and background to be an effective leader" of the regulatory regulation group. Father testified that the position required one to have fifteen to twenty years of experience in federal lobbying and governmental relations, while father had "virtually none." However, father stated that Capital One had instituted a policy of switching mid- to senior-level managers into different roles to "broaden their experience." Based on this policy, he was transferred.

Father stated that he was not very successful in his new position, and, in March 2003, he and his superiors reached a "mutual agreement" that father should leave that position so that Capital One could fill his role with someone "who had experience." Father's old position at Capital One in the corporate counsel department was no longer available, and he did not possess the proper business experience to transfer to another department. Under the terms of father's

departure, he received severance pay for one year, at the same level of salary he had when employed, payment of his tuition to obtain a master's degree in business administration, and a statement by Capital One that father was leaving through no fault of his own.

While father was receiving his severance pay from Capital One, he took the opportunity to establish a private equity fund where he was the principal investor, shareholder, and partner. While working for this company, which currently operates under the name Mirabilis Ventures, father took no salary. Based on the bonus and severance pay he received from Capital One, father earned $283,000 in 2003. Father continued to pay $890 per month in child support to mother pursuant to their January 2003 agreement.

In August 2004, father began working in Baltimore with CitiFinancial as its general counsel. Father found this job through a recruiter. CitiFinancial paid father $160,000 in salary, with the potential to earn up to 100% of his salary in bonuses each year, for a potential total of $320,000. Father worked in Baltimore Monday through Friday, but continued to live in Richmond on the weekends to spend time with his children.

Initially, the children spent Monday and Tuesday with father's new wife while father worked in Baltimore. This arrangement prompted mother to file her motion seeking primary physical custody of the children.

In order to maintain joint physical custody of his children, father worked out an arrangement with CitiFinancial to work at home on Mondays and Tuesdays. This arrangement lasted four to five months, at which time CitiFinancial decided that they needed father in Baltimore full-time. Father determined that he was not willing to change his custody arrangement with his children, and resigned his position in August 2005.

Father returned to the same recruiter who had found him the job with CitiFinancial, but father testified that the recruiter found nothing available in the Richmond area at his salary level,

given his experience. Father testified that he also reviewed the jobs advertised in the newspaper and on online job-posting websites, but that he could not find "any jobs in the Richmond area . . . that pa[id] anything like Capital One does."[4] Father further stated that he "wasn't willing to work where [he] wouldn't be able to have custody of [his] children."

A few weeks after he left his position with CitiFinancial, father began working again for the private equity fund Mirabilis as a "senior strategist." Father's base salary was $150,000, "with the possibility of bonuses based on company performance." Father was paid a bonus of $20,000 in 2006 based on the company's performance in 2005. At the time of the August 2006 hearing, father was still working at Mirabilis.

At the hearing to change child support, mother conceded that she should have income imputed to her, as she voluntarily left her position at Capital One and was currently "underemployed." Mother also conceded that, based on the evidence at the hearing, there was not "sufficient evidence to grant [mother] an increase" in child support. However, mother argued that father did not meet his burden to prove that there was a material change in circumstances to reduce child support from $890 per month.

In an order dated January 17, 2007, the trial court found that there was a material change in circumstances since the 2001 order, in that both parties were earning substantially less money in 2006 than they had been in 2001.[5] The trial court determined that, under the child support guidelines using the actual current income of both parties, father would be required to pay

---

[4] Mother did not present any evidence that jobs comparable to father's job at Capital One or CitiFinancial were available to husband in Richmond.

[5] The trial court noted that, "The Court will deal with the parties' agreement dated January 31, 2003. However, since the last agreement was not made into an Order, the Court is dealing with the Final Decree dated of April 3, 2001." The trial court went on to find a "material change in circumstances" since the entry of the final decree, "in that both of the parties are earning much less income." Whether the trial court evaluated the change in circumstances from April 3, 2001, or January 31, 2003, is of no real consequence; both parties maintained the same positions and approximate salary levels on those two dates.

mother $751 per month.  However, the trial court found that both parties were "voluntarily underemployed."  The trial court noted specifically that father was not underemployed for leaving CitiFinancial, as "he left that position to retain his custody rights with his children at a time when there was a pending custody motion filed by [mother], because [father] worked out of town."  Instead, the trial court found that father was voluntarily underemployed "because he voluntarily left Capital One where he was making a greater amount of money."  The trial court never determined whether father was underemployed in his current position.

The trial court imputed income to mother in the amount of $7,750 per month, reflecting her level of salary and bonuses when she left Capital One in December 2005.  The trial court then imputed income to father in the amount of $23,333 per month, reflecting his level of salary and bonuses when he left Capital One in March 2003.  As a result of that imputed income, the trial court ordered father to pay mother $800 per month.

This appeal follows.

ANALYSIS

Voluntarily Underemployed

Father argues that the trial court erred in finding that he was voluntarily underemployed, and subsequently deviating from the child support guidelines.

> "Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below.  Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Hatloy v. Hatloy, 41 Va. App. 667, 671, 588 S.E.2d 389, 391 (2003) (quoting Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988)) (alteration in original).

This case arose after the original divorce and child support order was entered.  The standard of proof and burdens in such circumstances are clear.

"Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award. The moving party has the burden of proving a material change by a preponderance of the evidence." Crabtree v. Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993). "[A] party seeking a reduction in support payments has additional burdens: 'He must make a full and clear disclosure relating to his ability to pay. *He must also show that his lack of ability to pay is not due to his own voluntary act* or because of his neglect.'" Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (emphasis added) (quoting Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975)). Thus, in order to prove a material change in circumstances that justifies a reduction in support, a parent "must establish that he is not 'voluntarily unemployed or voluntarily under employed.'" Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting Code § 20-108.1(B)(3)).

Virginia Dep't of Soc. Servs. v. Ewing, 22 Va. App. 466, 470, 470 S.E.2d 608, 610 (1996).

In considering the appropriate amount of child support to be paid, "a trial court . . . is required to impute income to a parent who is found to be voluntarily underemployed." Niemiec v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citing Code § 20-108.1(B)(3)). In deciding whether income should be imputed to a parent, and the amount of such imputed income, "the trial court must 'consider the [party's] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children.'" Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (quoting Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579). The "court may [also] impute income based on evidence of recent past earnings." Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993).

We must determine whether father met his burden to establish that he was not "voluntarily underemployed." In Hatloy, we determined whether, for purposes of imputing income, a father seeking reduction of his existing child support obligation met his burden of proving he was not voluntarily underemployed. There, we distinguished between the father's

burden of proof and the burden of proof imposed on parties seeking imputation of income to the

other party at the time of an initial support award, as follows:

> Although the word, "imputation," is used in this context, the burden of proof remains on husband, not on wife who is arguing for imputation, unlike cases asking for imputed income at the time of the initial award. Here, the trial court had previously set an amount of support, based on husband's then-salary from [his job at the time of the initial award]. Thus, wife's request for imputation is basically an argument in support of continuing the initial award. Husband, on the other hand, is asking the court to reduce the previously set support amount. In meeting his burden on the motion to reduce the awarded support, husband must prove, among other issues, that he should not have his previous income from [his job at the time of the initial award] imputed to him.

Hatloy, 41 Va. App. at 672 n.3, 588 S.E.2d at 391 n.3.

> Aside from having to prove a material change in circumstances, husband had to prove that this change warranted a support modification. In discharging this burden, one of the circumstances that the chancellor must consider is whether the changed circumstances arose from his own voluntary underemployment. A trial court may use its broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support.

Reece v. Reece, 22 Va. App. 368, 373, 470 S.E.2d 148, 151 (1996) (citation omitted) (footnote

omitted).

Unless the trial judge misapplies the legal standard or misallocates the burden of proof,

the question of "'[w]hether a person is voluntarily unemployed or underemployed is a factual

determination,'" O'Hara v. O'Hara, 45 Va. App. 788, 798, 613 S.E.2d 859, 864 (2005) (quoting

Blackburn, 30 Va. App. at 102, 515 S.E.2d at 784), one firmly placed "'within the [sound]

discretion of the trial court,'" Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600

(1995) (quoting Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994)).

Employing the most deferential standard of appellate review, we reverse factual findings "only if

plainly wrong or not supported by credible evidence." Budnick v. Budnick, 42 Va. App. 823, 841, 595 S.E.2d 50, 59 (2004).

The record shows that father experienced the material change in circumstance necessary for the trial court to review his child support obligation, namely, that his actual income was much lower in 2006 than at the time of the initial award.

Here, the trial court determined that father did not voluntarily leave CitiFinancial, but found that father was voluntarily underemployed based on his departure from Capital One "where he was making a greater amount of money." The proper analysis evaluates whether father is *currently* voluntarily underemployed, based on the position he holds, his current income level, the reasonableness of father's efforts to find employment, and the availability of other positions at higher income levels, given his education and experience. Blackburn, 30 Va. App. at 102, 515 S.E.2d at 784. These factors must be considered in light of the other circumstances surrounding this case, such as the custody arrangement between the parties and the ability of father to obtain a position that allows him to maintain that custody arrangement. See Reece, 22 Va. App. at 376-77, 470 S.E.2d at 152-53 (holding that, where husband had strong familial ties to Richmond, he was not voluntarily underemployed based on his refusal of a job opportunity requiring him to relocate to a different state). It is only when considering all of these factors that the trial court can determine whether, in the party's current position, he is voluntarily underemployed.

In determining whether father's move to employment at a lower income level would warrant the imputation of income, it is certainly appropriate to weigh the sequence of events leading to his current employment beginning with his departure from Capital One, the position he held at the time of the initial award. However, any such determination must be made in context of the principal concern: whether father is *currently* voluntarily underemployed.

First, the circumstances under which father left his position at Capital One could hardly be considered voluntary. Father was transferred, against his request to remain in his original position, into a role that required substantial experience and expertise that father did not have. After father predictably did not succeed in this position, he and his superiors reached a mutual agreement that father should leave so that the company could hire someone with more experience. Further, the company did not have any other positions for father at that time. Father characterized his departure as an "opportunity to leave . . . with dignity." Under the terms of this agreement, Capital One not only offered father one year of severance pay, maintaining his salary level, but also agreed to continue paying father's tuition to pursue a master's degree. Capital One also agreed that father was leaving through "no fault of [his] own."

Based on the uncontested evidence presented at the hearing, it is clear that father's departure from Capital One was not voluntary. Thus, to the extent that the trial court found that father "voluntarily" left his position at Capital One, we conclude, as a matter of law, that the trial court erred. The record does not support the trial court's finding.

However, the fact that, at some time in the past, father may have been involuntarily terminated from his job at Capital One is not determinative of whether he is now voluntarily underemployed. One could have been involuntarily terminated from a higher paying job, yet income may still be imputed to father if he is now voluntarily underemployed.

The trial court determined that father did not voluntarily leave his position with CitiFinancial, given the location of the position and the pending custody petition filed by mother at the time. See Reece, 22 Va. App. at 376-77, 470 S.E.2d at 152-53. Mother did not assign error to that finding by the trial court, so that finding is not before us on appeal.

However, a finding that father did not voluntarily leave his position at CitiFinancial does not end the analysis of whether father is currently voluntarily underemployed. While father may

not have left the position with CitiFinancial voluntarily, based on his custody obligations to his children, the trial court never considered whether father's efforts to secure employment closer to Richmond at a comparable level of income were sufficient to meet father's burden to show that he was not voluntarily underemployed. See Hatloy, 41 Va. App. at 672-73, 588 S.E.2d at 391-92 (holding that, though mother conceded father left his original position involuntarily when he was terminated through no fault of his own, the court still had to determine whether father was voluntarily underemployed by examining his efforts to find employment and by considering whether father could have earned more money in a different position). Though father's current employment may be a bona fide and reasonable business venture, such a decision does not necessarily preclude the imputation of income to father. See Antonelli, 242 Va. at 156, 409 S.E.2d at 119-20 (holding that a father who made a lateral move from a salaried to a commissioned position, while made in good faith, bore the burden of the risk such a move created and the trial court did not err in imputing income to him at the level of his prior salaried position).

Thus, we find that the trial court erred in ruling that father voluntarily left his position at Capital One. In reaching this ruling, the trial court failed to consider the other factors relevant to an analysis of whether father is voluntarily underemployed in his current position. On remand, the trial court must consider all of the relevant factors, particularly whether father's efforts to find a position were reasonable and whether other positions in the Richmond area were available to father, utilizing his education and experience, at a pay level comparable to his former positions with Capital One and CitiFinancial.

### Attorney's Fees

Both mother and father request attorney's fees and costs associated with this appeal. We have held:

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

In mother's brief on appeal, she requested that "if this Court *affirms* the trial court's rulings, that the matter be remanded to the trial court to award her attorney's fees and costs for defending this appeal." (Emphasis added). As we are reversing the decision of the trial court, we need not consider mother's request for attorney's fees and costs associated with this appeal.

As to father's request for attorney's fees, we note that an award of attorney's fees is not proper where the question presented is one "about which there may have been a reasonable and an honest difference of opinion at the time the appeal was taken." Honaker & Feeney v. Hartley, 140 Va. 1, 15, 124 S.E. 220, 224 (1924). Here, mother was defending the ruling of the trial court. Because we are reversing that ruling, this is an issue about which there was "a reasonable and an honest difference of opinion." Thus, we deny father's request for attorney's fees and costs on appeal.

### CONCLUSION

We hold that the trial court erred in finding that father voluntarily left his position at Capital One. We further find that the trial court failed to consider the other factors relevant to an analysis of whether father is voluntarily underemployed in his current position, particularly whether father's efforts to find a position were reasonable and whether other positions in the Richmond area were available to father, utilizing his education and experience, at a pay level comparable to his former positions with Capital One and CitiFinancial. We reverse the decision of the trial court and remand for proceedings consistent with this opinion.

Reversed and remanded.