# CIRCUIT COURT OF FAIRFAX COUNTY

Protap Mukerji

v.

Sahely Mukerji

November 25, 2013

Case No. CL-2012-8535

By Judge Jonathan C. Thacher

This matter came before the Court for determination on the parties' cross-petitions for Modification of Child Support. Having considered the evidence, arguments and memorandum of counsel, and the relevant legal authority, the Court makes the following findings and rulings:

*Background*

On December 17, 2003, this Court entered a Final Decree of Divorce for Plaintiff/Counter-Defendant Protap Mukerji and Defendant/Counter-Plaintiff Sahely Mukerji, which incorporated the parties' property settlement agreement ("Final Decree"). Almost three years later, Mr. Mukerji moved from his home in McLean, Virginia, to Charlotte, North Carolina, to begin employment with Bank of America as a Senior Vice-President. On January 21, 2012, Bank of America informed Mr. Mukerji that the company would be restructuring, which ultimately resulted in Mr. Mukerji's termination from his position with Bank of America. Mr. Mukerji began receiving unemployment benefits from the State of North Carolina shortly thereafter. On June 7, 2012, Mr. Mukerji filed a Petition for Modification of Child Support and Child Visitation.

As set forth in the Final Decree, Plaintiff's child support obligation is as follows:

> (d) Commencing five (5) years after August 1, 2003, and continuing monthly on the first of each successive month thereafter, Husband shall pay the Wife child support in the

amount of One Thousand Six Hundred Sixty Four Dollars ($1,664.00) per month.

Ms. Mukerji filed her Answer and Cross-Petition, requesting the Court impute Mr. Mukerji's income. Ms. Mukerji further alleged that Mr. Mukerji was required to reimburse $4,000 in uncovered medical expenses. Mr. Mukerji denied the allegations in the Cross-Petition. On the issue of uncovered medical expenses, the Final Decree provides:

> Husband will promptly reimburse Wife for two thirds (2/3) of the child's medical bills not covered by insurance from the date of execution of this agreement.

Prior to the hearing on the parties' petitions, Mr. Mukerji made an "agreement" with Ms. Mukerji to withhold child support payments until the matter was concluded. At the hearing, the Court informed the parties that such unilateral modification was not binding, as Mr. Mukerji was bound by the terms set forth in the Final Decree until the Court orders otherwise. The Court then instructed Mr. Mukerji to promptly pay the outstanding child support payments.

*Analysis*

A. *Modification of Child Support*

Mr. Mukerji contends that modification is justified, because he has lost employment at no fault of his own and cannot afford to pay the child support set forth in the Final Decree without suffering severe financial hardship. Ms. Mukerji contends that Mr. Mukerji is voluntarily underemployed and, therefore, the Court is required to impute Mr. Mukerji's income. (Ms. Mukerji misstates in her Answer that Mr. Mukerji is underemployed. Mr. Mukerji is actually unemployed and receiving North Carolina unemployment benefits.)

In petitioning the Court for a modification of child support, the moving party has the burden of presenting evidence that there has been a material change in circumstances. *See Crabtree v. Crabtree*, 17 Va. App. 81, 88, 435 S.E.2d 883 (1993). Mr. Mukerji presented sufficient evidence that, since the entry of the Final Decree, he has suffered a significant decrease in income as a result of his being laid off by Bank of America and that such termination was a result of the company's restructuring. This Court finds that Mr. Mukerji's termination and subsequent decrease in income constitutes a material change in circumstance, therefore, warranting consideration of his Petition for Modification.

Whether this material change in circumstances justifies a modification of Mr. Mukerji's current child support obligations turns on whether Mr. Mukerji is voluntarily unemployed or voluntarily underemployed. *See* Va.

Code Ann. § 20-108.1; *see, e.g., Antonelli v. Antonelli*, 242 Va. 152, 154, 409 S.E.2d 117 (1991). In other words, Mr. Mukerji must demonstrate that "his lack of ability to pay is not due to his own voluntary act or because of his neglect." *Hammers v. Hammers*, 216 Va. 30, 31-32, 216 S.E.2d 20 (1975).

Unlike initial determinations of child support, a petition for modification of child support keeps the burden on Mr. Mukerji to demonstrate that his income should not be imputed. *Hatloy v. Hatloy*, 41 Va. App. 667, 672, n. 3, 588 S.E.2d 389 (2003); *cf. Niemiec v. Virginia Dep't of Soc. Servs.*, 27 Va. App. 446, 451, 499 S.E.2d 576 (1998) (holding that the burden is on the party seeking imputation when there is an initial determination of child support). The Virginia Court of Appeals has opined:

> Although the word, "imputation" is used in this context, the burden of proof remains on husband, not on wife who is arguing for imputation, unlike cases asking for imputed income at the time of the initial award. Here, the trial court had previously set an amount of support, based on husband's then-salary [his job at the time of the initial award]. Thus, wife's request for imputation is basically an argument in support of continuing the initial award. Husband, on the other hand, is asking the court to reduce the previously set support amount. In meeting his burden on the motion to reduce the award support, husband must prove, among other issues, that he should not have his previous income from [his job at the time of the initial award] imputed to him.

*Broadhead v. Broadhead*, 51 Va. App. 170, 180, 655 S.E.2d 748 (2008) (*quoting Hatloy*, 41 Va. App. at 672). Moreover, the party moving to reduce child support must not only prove that they are not voluntarily unemployed at the time of the material change of circumstances, but that they are not currently voluntarily unemployed. *Broadhead*, 51 Va. App. at 181 (*citing Blackburn v. Michael*, 30 Va. App. 95, 102, 515 S.E.2d 780 (1999)).

In considering whether to impute Mr. Mukerji's income, the Court has examined Mr. Mukerji's "earning capacity, financial resources, education, and training, ability to secure such education and training, and other factors relevant to the equities of the parents and children." *Niemiec*, 27 Va. App. at 451.

First, the Court concludes that Mr. Mukerji has established that Bank of America's restructuring and Mr. Mukerji's subsequent loss of employment was involuntarily. Therefore, the next issue is whether Mr. Mukerji is currently voluntarily unemployed. In answering this question, the Court considers the reasonableness of Mr. Mukerji's efforts to find employment and the availability of jobs to him, given his experience and education, as well as other factors. *See Broadhead*, 51 Va. App. at 181 (*citing Blackburn*, 30 Va. App. at 102).

The evidence produced by Mr. Mukerji demonstrates that he has made some effort to find employment. Notwithstanding, he has failed to articulate an explanation for collecting unemployment for over a year, without any success in securing a job. Mr. Mukerji represents that he does not want to accept a lower paying job than he was holding before his loss of employment. He believes that an extended period of unemployment is a better career choice, strategically, than seeking a lower paying job. Ultimately, Mr. Mukerji contends that there are no jobs currently available in his field.

Alternatively, Ms. Mukerji's vocational expert opined with a reasonable degree of certainty that Mr. Mukerji should have found a job within a year. The expert refuted the notion that there were no jobs available for Mr. Mukerji by naming specific companies that are looking for individuals with Mr. Mukerji's experience and skills.

The evidence shows that, although Mr. Mukerji has submitted a large number of applications, this number just satisfies the minimum requirements to receive North Carolina unemployment benefits. Significantly, however, Mr. Mukerji has not undertaken a full-time employment search. For example, he has not regularly kept records of the applications he has submitted, initiated phone calls to potential employers, or followed up on job opportunities.

The Court finds that Mr. Mukerji's credibility as to his financial situation is questionable. Just over one month before the hearing on his Petition for Modification of Child Support, Mr. Mukerji deposited $213,857.22 into a cash reserve IRA from his 401(k) plan, which he asserts should not be imputed. Additionally, despite his child support obligation, he continues to make monthly credit card payments totaling over thousands of dollars. The Court does not accept that Mr. Mukerji should be permitted to make purchases and spend money on nonessential items, but decrease his financial obligation to the parties' autistic child. Upon review of the records, the Court finds that Mr. Mukerji is able to continue his current child support obligations, as he has demonstrated he is able to afford his other preferred expenses.

Accordingly, the Court finds that Mr. Mukerji is currently voluntarily unemployed, and, therefore, he has failed to meet his burden to warrant the Court to refrain from not imputing his income. Imputing Mr. Mukerji's income into the Court's calculation of child support yields an amount that deviates from the child support guidelines.

In considering a deviation from the child support guidelines:

> [t]he finding that rebuts the guidelines shall state the amount of support that would have been required under the guidelines, shall give a justification of why the order varies from the guidelines, and shall be determined by relevant evidence pertaining to the [fifteen factors set forth under this

section] affecting the obligation, the ability of each party to provide child support, and the best interests of the child.

Va. Code Ann. § 20-108.1(B) (2013). Without imputing any of Mr. Mukerji's prior income, the amount for child support Mr. Mukerji would be required to pay under the guidelines provided in Va. Code § 20-108.2 is $149.60.

In determining whether deviation is appropriate and pursuant to the factors set forth in Va. Code § 20-108.1(B), the Court finds: (1) the parties did not present any evidence that either was receiving outside monetary support; (2) although there was some evidence that costs would be incurred by the parties upon their entry of a child visitation agreement, the Court declines to give substantial weight to incurred visitation costs; (3) the Court has considered the good faith and reasonableness of Mr. Mukerji's efforts to find employment, but finds that those efforts are inadequate, and, consequently, Mr. Mukerji is voluntarily unemployed. Therefore, Mr. Mukerji's income is imputed; (4) the parties did not present any evidence that either parent was attending an educational or vocational program; (5) pursuant to the incorporated Property Settlement Agreement, Mr. Mukerji is responsible for disposing of the debts incurred during the marriage; (6) even though Mr. Mukerji is responsible for maintaining life insurance under the Final Decree, his unemployment negates this obligation; (7) neither party presented any evidence of extraordinary capital gains; (8) the Court has considered the stipulated fact that the parties' child is autistic and weighs the child's particular needs in determining the deviation from the statutory child support guidelines; (9) no evidence of the child's having independent financial resources was submitted to the Court; (10) the Court did not find any relevant evidence concerning the standard of living of the child during the marriage; (11) the Court has considered Mr. Mukerji's and Ms. Mukerji's earning capacity, obligations, financial resources, and special needs. The Court gives particular consideration to the financial resources available to Mr. Mukerji, including various investment accounts and bank accounts; (12) there was no evidence presented concerning the earning potential of marital property; (13) both parties have agreed in the incorporated Property Settlement Agreement that the parties would alternate years in claiming the child as a dependent on tax returns, which results in neutral consideration of this factor. The Court does note that Ms. Mukerji has claimed a parent as a dependent on her 2012 tax return; (14) the Court has considered the Property Settlement Agreement and the Final Decree; (15) the Court has considered those additional equities maintained by both parties, including, but not limited to, the IRA funds held by both parties.

In considering all of these factors, the ability of the parties to provide financial support to their child, and the needs and best interests of the child, the Court finds that deviation from the child support guidelines will be limited to the imputation of Mr. Mukerji's income. The majority of the incurred expenses for the child pertain to the child's medical needs. Ms.

Mukerji's expense sheet submitted at the hearing reveals that uninsured medical expenses alone would cost Mr. Mukerji an average of $466.09 a month. Because the Final Decree separately addresses these additional medical expenses, the Court declines to impose further deviation from the guidelines other than the imputation of income, because the additional deviation would result in an unjust child support payment for Mr. Mukerji.

At the time the parties entered into the Settlement Agreement, the parties represented that Ms. Mukerji earned a gross income of $2,917.00 a month, and Mr. Mukerji earned a gross income of $9,346.00 per month — both amounts included bonuses, stock options, incentive pay, and the like.

For purposes of the instant child support calculation, the Court uses Ms. Mukerji's stipulated current gross income of $5,150, and imputes Mr. Mukerji's income of $9,346.00 at the time of the initial award. Consequently, Mr. Mukerji's child support payments are modified to $1,373.84 per month.

## B. *Medical Expenses*

At the hearing, Ms. Mukerji presented evidence that the current outstanding medical expenses amount to $5,259.25. Mr. Mukerji objects to paying these medical expenses, because he was not made part of the decision to incur such expenses. However, Mr. Mukerji does not cite any case law, nor has he presented any evidence, to support his argument. Rather, he has only boldly declared that he will not pay for the medical expenses. *See Stockdale v. Stockdale*, 33 Va. App. 179, 184, 532 S.E.2d 332 (2000) ("The burdens of production and persuasion are generally allocated to the party seeking to disturb the *status quo*."). Conversely, Ms. Mukerji submitted various documents demonstrating that these expenses were necessary and incurred.

The Final Decree provides:

> Husband will promptly reimburse Wife for two thirds (2/3) of the child's medical bills not covered by insurance from the date of execution of this agreement.

Significantly, the Final Decree and the incorporated Settlement Agreement are silent as to whether either party has an obligation to inform and make joint decisions regarding medical expenses. The language of the Final Decree is clear that Mr. Mukerji is to pay two-thirds of the uncovered medical expenses. *See Albert v. Albert*, 38 Va. App. 284, 297-98, 563 S.E.2d 389 (2002) (*citing Fredericksburg Constr. Co. v. J. W. Wyne Excavating, Inc.*, 260 Va. 137, 144, 530 S.E.2d 148 (2000) ("trial courts have the authority to interpret their own orders")). Consequently, given that Mr. Mukerji has failed to provide any evidence that he is not liable for the two-thirds portion of his child's medical payments, the Court finds that should Mr. Mukerji choose not to reimburse Ms. Mukerji for the incurred expenses, he will continue to be in violation of the Final Decree. Accordingly, Mr. Mukerji is

ordered to pay the two-thirds portion of these medical expenses as set forth in the enclosed Order and two-thirds of all medical bills for the child not covered by insurance pursuant to the Final Decree.

## C. *Attorney's Fees*

Both parties ask the Court for an award of attorney's fees. As provided in the incorporated Settlement Agreement:

> 21. *Payment of Counsel Fees.* Each party agrees to pay their own counsel fees, court costs, and other costs in connection with an uncontested action for divorce that may be brought by either party in the future.

Mr. Mukerji seeks the recovery of attorney's fees for Ms. Mukerji's bringing the cross-petition for enforcement of uncovered medical expenses. Conversely, Ms. Mukerji is praying for relief in the form of attorney's fees due to Mr. Mukerji's failure to abide by the Final Decree of Divorce.

"The key to a proper award of counsel fees is the reasonableness under all of the circumstances." *McGinnis v. McGinnis*, 1 Va. App. 272, 277, 338 S.E.2d 159 (1985). In considering all circumstances, the Court declines to override the language in the Property Settlement Agreement. The Court has considered the equities of both parties and finds that each party will be responsible for their own attorney's fees.