COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Malveaux
Argued at Richmond, Virginia


KIRKE F. SZAWRONSKI

v.       Record No. 1873-18-2

ANA L. SZAWRONSKI

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
JULY 23, 2019

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Sarah J. Conner (Rick A. Friedman, II; Mary Ashby Brown;
Friedman Law Firm, P.C., on briefs) for appellant.

Morgan M. Droke (Cravens & Noll, P.C., on brief), for appellee.

Appellant Kirke Szawronski ("husband") made a motion to the trial court to modify child

and spousal support payments that he was required to pay to appellee Ana Szawronski ("wife").

The trial court denied husband's motion, finding that there was a material change of

circumstances but also finding that the change did not warrant modification of either spousal

support or child support.  On appeal, husband challenges the trial judge's denial of his motion to

modify support.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, we view the evidence in the light most favorable to the prevailing party in the trial court, wife in this case. See Reece v. Reece, 22 Va. App. 368, 372 (1996).

Husband and wife were married in July 2007 and have two children – one born in December 1998 and the other born in September 2009. The couple was divorced by a final decree of divorce entered on August 11, 2017. The decree incorporated the parties' July 26, 2017 agreement that husband would pay wife $4,000 per month in spousal support and $1,500 per month in child support. On October 18, 2017, husband filed a motion to reinstate the matter on the trial court's docket for the purposes of modifying spousal support and child support. The case was reinstated on the docket and on August 7, 2018, the trial judge held an *ore tenus* hearing.

At the *ore tenus* hearing, husband testified regarding his income at the time the spousal support and child support amounts were finalized by the August 11, 2017 divorce decree. He testified that prior to their divorce, husband and wife owned a tax company, Francisco's Tax Service. Husband testified and submitted evidence that he and wife sold their company to JTH, Inc., doing business as Siempre Tax (hereinafter referred to as JTH), and that as part of the sale, husband was hired as Vice President of Operations in the United States at a starting annual salary of $180,000 plus a bonus of up to 30% of gross income generated by new offices opened. The evidence showed husband's employment with JTH began in May 2016. Husband testified that at the time of the final divorce order, in addition to his income from JTH, he received approximately

---

[1] Part of the record in this case was sealed. In order to appropriately address the assignments of error raised by appellant, this opinion includes some limited portions of the record that were sealed. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

$2,000 per month by managing real estate owned by his parents and received $2,000 per month in payments on a note for real estate that he had previously sold.

Husband also testified regarding the changes in his income since the divorce decree was entered. He testified that he was suddenly cut off from JTH when the company disabled his phone and computer although he never was specifically told that he was fired. He testified that the last paycheck he received from JTH was in September 2017, which was initially deposited into his account but subsequently removed from his account by the company and that he never received a bonus payment.[2] He testified that at the time of the *ore tenus* hearing, he was the twenty-five percent owner of a new tax business, Latino Tax, where he was on the payroll, and was paid $1,600 per month.[3] Husband further testified that, in addition to his income from Latino Tax, he was still receiving $2,000 per month in note payments from his previously sold property. He stated that his parents had sold some of their real estate, and consequently his income from managing those properties had decreased to $1,537 per month.

Husband also testified that, as a result of this substantial loss in income, in order to keep up with his financial responsibilities, including paying spousal support and child support, he had to sell two pieces of real estate, a trailer and lawnmower, and two vehicles, as well as place one vehicle on consignment. He testified that he also had to take out a loan of $35,000 from his parents, and he introduced into evidence documents showing he withdrew $4,722.95 from his 401(k) retirement account – leaving a balance of $0.

At the *ore tenus* hearing, wife also testified concerning her income and expenses, stating, "my income or anything, it has not changed. Everything is still the same." She also testified that

---

[2] Husband testified he had multiple lawsuits pending against his former employer.

[3] Husband also testified that he had been subject to a non-compete clause with JTH which had hindered him from providing tax services in competition with JTH until it had recently expired.

she could not seek employment because she provides care for the parties' daughter who has special needs.

On August 10, 2018, the trial court issued a letter opinion denying husband's motion to modify. In its letter opinion, the court noted it found husband's testimony "less than credible." While the court found "no evidence that Mr. Szawronski was terminated for cause or voluntarily left JTH Tax," it concluded, "Most significantly, the Court heard no evidence that Mr. Szawronski's earning capacity has decreased in any way." The trial court, however, found "facts sufficient to establish a material change in circumstances," but held that "the material change in circumstances does not warrant a modification of spousal or child support."

On appeal, husband argues, "The trial court erred in imputing income to [husband] at his prior earning capacity, which was a speculative amount not supported by the evidence." Husband also assigns error to the trial court's finding that modification of neither spousal nor child support was warranted. In addition, he argues that the "trial court erred in failing to consider and/or run the child support guidelines in making its decision to decline to modify child support."

## II. ANALYSIS

"Decisions concerning both [child and spousal] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784 (1994).

Trial courts have the authority to "increase, decrease, or terminate" spousal support "as the circumstances may make proper." Code § 20-109. "The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." Barrs v. Barrs, 45 Va. App. 500, 506 (2005) (quoting Moreno v. Moreno, 24 Va. App. 190, 195 (1997)). "The material change in circumstances must have

occurred after the most recent judicial review of the award," id., and "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay," Hollowell v. Hollowell, 6 Va. App. 417, 419 (1988). Any modification shall be done "[u]pon consideration of the factors set forth in subsection E of § 20-107.1." Code § 20-109(B).

Similarly, trial courts may modify child support. Code § 20-108. "Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award." Crabtree v. Crabtree, 17 Va. App. 81, 88 (1993). "[I]n order to prove a material change in circumstances that justifies a reduction in support, a parent 'must establish that he is not "voluntarily unemployed or voluntarily under employed."'" Hatloy v. Hatloy, 41 Va. App. 667, 672 (2003) (quoting Virginia Dep't of Soc. Servs. v. Ewing, 22 Va. App. 466, 470 (1996)). When, as here, child support was based upon an agreement by the parties, the trial court is not prevented from exercising its power to change, modify, or enforce its decree concerning child support. Virostko v. Virostko, 59 Va. App. 816, 824 (2012). "In setting an award of child support, the 'primary issue before a trial court judge is the welfare and best interests of the child.'" L.C.S. v. S.A.S., 19 Va. App. 709, 717 (1995) (quoting Brody v. Brody, 16 Va. App. 647, 651 (1993)).

A Material Change of Circumstances

The trial court found that a material change of circumstances had occurred – apparently because of husband's loss of employment at JTH and the huge reduction in his earned income to a small fraction (less than one-ninth) of what it had been before the divorce. Nevertheless, the trial court determined that the material change of circumstances was not sufficient to warrant a modification of either spousal support or child support. The court found that there was "no evidence that Mr. Szawronski was terminated for cause or voluntarily left" his previous

employment. However, the trial court stated that it "heard no evidence that Mr. Szawronski's earning capacity has decreased in any way; indeed, he has already started another business."

Code § 20-107.1(E)(9) provides that "earning capacity" includes "the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity." See e.g., Stubblebine v. Stubblebine, 22 Va. App. 703, 711 (1996) (*en banc*) (holding that the trial court did not err in imputing income when appellant was not gainfully employed but remained capable of gainful employment). While earning capacity entails more than just employment income, such income should at least be considered in determining what someone's earning capacity is. See Donnell v. Donnell, 20 Va. App. 37, 41 (1995).

Husband presented uncontested evidence about his income. At the time of the divorce, husband's salary from his job was $180,000 per year plus an expected bonus, while at the time of the hearing for husband's motion to modify, his income from his job was $1,600 per month (or $19,200 per year). Put another way, his employment income decreased to the extent that he was earning just over ten percent of what he previously had earned. Even considering his total income, including earnings from his employment, income from properties he managed for his parents, and income from a note from the previous sale of real estate, his total income went from approximately $228,000 per year to approximately $61,644 – barely one quarter of what it had been at the time of the final decree of divorce.[4] Whatever the case, the evidence shows husband experienced a huge drop in income.

In light of such a substantial decrease in income, it is incompatible for the trial judge to have found that there was "no evidence that Mr. Szawronski was terminated for cause or voluntarily left"

---

[4] Although the joint income tax return for 2017 filed by husband and his second wife, Katherine Szawronski, shows income of over $117,000, husband was receiving income from JTH until September 2017, and it is unclear how much of the income was from Katherine Szawronski.

while at the same time finding that there was "no evidence that Mr. Szawronski's earning capacity has decreased in any way," unless it implicitly found that husband was voluntarily underemployed.

Imputing Income

"In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed." Blackburn v. Michael, 30 Va. App. 95, 102 (1999). See also Stubblebine, 22 Va. App. at 710-11; Calvert, 18 Va. App. at 784. It is not apparent from the trial judge's August 10, 2018 letter opinion if he found husband to be voluntarily underemployed and therefore imputed income to husband. However, the trial judge would certainly have had to at least implicitly impute income to husband in order to leave both spousal support and child support unmodified, especially since the total annual required payments of spousal support and of child support amount to $66,000 per year while the uncontradicted evidence shows that husband's total annual income from all sources is approximately $61,644. Furthermore, the evidence shows that husband was selling vehicles and other property and taking out loans in order to be able to make his spousal support and child support payments. Any such imputation of income is problematic for three reasons.

First, wife never even asked the trial judge to find husband voluntarily underemployed or to impute income to husband.

Second, although a court may impute income when it finds that a party is voluntarily unemployed or underemployed, the trial court in this case made no such finding (at least not explicitly) that husband was voluntarily underemployed. See Code § 20-108.1(B)(3) (providing that one of the factors a court is to consider in determining child support is "[i]mputed income to a party who is voluntarily unemployed or voluntarily under-employed"); Brody, 16 Va. App. at 651 ("Where a parent is 'voluntarily unemployed or voluntarily underemployed' a trial court may impute income based on evidence of recent past earnings." (citing Barnhill v. Brooks, 15

Va. App. 696, 701-02 (1993))).  Here, the trial court also found "no evidence that Mr. Szawronski was terminated for cause or voluntarily left" his previous employment, and the evidence shows that husband is employed in the same field as his previous employment.  Therefore, the apparent implicit imputing of income without a finding of voluntary unemployment or underemployment makes the trial court's letter opinion internally inconsistent.

Third, when determining the appropriate amount of child support, if the trial judge did impute income, he was required to calculate and run the child support guidelines provided in Code § 20-108.2 *before* imputing any income.  Niblett v. Niblett, 65 Va. App. 616, 625 (2015); Brody, 16 Va. App. at 650 ("Before imputing income to a party, the trial court must first determine the presumptive amount of child support under the guidelines."); O'Brien v. Rose, 14 Va. App. 960, 963-64 (1992); Watkinson v. Henley, 13 Va. App. 151, 158 (1991) ("The starting point . . . for determining the child support obligation of a party, whether initially or at a modification hearing, is to compute the presumptive amount using the schedule found in Code § 20-108.2(B)."); Farley v. Liskey, 12 Va. App. 1, 5 (1991) ("Imputed income is a factor which may be used to rebut the presumptive amount only after the presumptive amount is determined.").  Furthermore, if the trial judge imputed income, he was required to make written findings explaining why he deviated from the presumptive amount of child support provided in the guidelines.  Code § 20-108.2(A) ("In order to rebut the presumption, the court shall make written findings in the order as set out in § 20-108.1 . . . that the application of the guidelines would be unjust or inappropriate in a particular case as determined by relevant evidence pertaining to the factors set out in § 20-108.1."); Brody, 16 Va. App. at 650 ("If a trial court imputes income to a party, it must make written findings explaining why imputed income to the party would make it unjust or inappropriate to award the presumptive amount of child support.").  Assuming the trial court imputed income, the record does not show that the trial judge first

computed the presumptive amount of child support, and neither his letter opinion nor the final order contains the required written findings explaining a departure from the presumptive amount under the child support guidelines.

### Circumstances as They Existed at the Time of the Hearing

Even though the trial court found that at the time of the hearing, husband "has suffered a business setback, a phenomenon not at all unusual or unexpected for entrepreneurs," it concluded that "the Court heard no evidence that Mr. Szawronski's earning capacity has decreased in any way." The trial court did not rely on circumstances as they existed at the time of the hearing. A trial court's factual findings must be based on actual evidence in the record. See, e.g., Calvin v. Calvin, 31 Va. App. 181, 187 (1999); Clements v. Clements, 10 Va. App. 580, 588-89 (1990). "When making awards based on income, the trial court is authorized to consider not only actual income but 'earning capacity' as well. However, the award must be based upon circumstances as they exist at the time of the award." Donnell, 20 Va. App. at 41 (citations omitted). Although "courts may consider reasonably foreseeable events," they "may not base an award on speculation of future events." Rogers v. Rogers, 51 Va. App. 261, 270 (2008). "An award 'premised upon the occurrence of an uncertain future circumstance . . . ignores the design and defeats the purpose of the statutory scheme.'" Donnell, 20 Va. App. at 41 (quoting Payne v. Payne, 5 Va. App. 359, 363 (1987)).

Husband testified that his new business, Latino Tax, was "start[ing] from scratch" and was "just get[ting] by paying bills and being able to pay ourselves." When asked on direct examination if he had attempted to find another job similar to his previous job with JTH, husband testified that he had attended conventions and networking events for tax professionals and that the manner in which his employment with JTH ended complicated his employment prospects. In light of this evidence, in making its factual finding that husband's earning capacity had not decreased, the trial

judge was either speculating that husband's new business, Latino Tax, would grow at some future time to bring husband an income similar to that which he had at the time of the final divorce decree or speculating that husband was forgoing employment for which he could be receiving greater compensation. However, there was no evidence in the record regarding any other available employment opportunities for husband, and wife did not contest husband's testimony as to his difficulty in finding employment.

<u>Attributing the Decision to Sell the Jointly Owned Tax Company Solely to Husband</u>

In his letter opinion, the trial judge attributes husband's reduced income to actions or decisions made by husband. The judge's letter opinion states:

> The Court notes that, for better or worse, Mr. Szawronski's current financial situation is a result of decisions he made regarding his own employment, career, finances, and economics. He testified that he saw great opportunity in opening the tax office branches from which he would derive sizable income. He made the decision to associate with JTH Tax. He made the decision to expand into the Hispanic community and testified as to the success of that endeavor.

However, the uncontested evidence is that husband and wife jointly owned Francisco Tax and that *both* were in agreement in selling the company to JTH prior to the divorce.[5] Given that both husband and wife decided to sell Francisco Tax to JTH and given that the trial court found "no evidence that Mr. Szawronksi was terminated for cause or voluntarily left JTH Tax," husband alone should not bear the financial burden of reduced income that resulted from his subsequent removal from that company. The financial hardships caused by JTH's dismissal of husband would have affected wife even if the parties had remained married. The letter opinion does not provide an explanation for why, given husband's huge decrease in income, the amount of spousal support ordered by the trial court ($4,000 per month) should continue at the same level, which is also

---

[5] Wife's counsel conceded at oral argument before this Court that both parties, including wife, were in agreement to sell their jointly owned tax company to JTH.

- 10 -

more than two and a half times the amount of child support ($1,500 per month) husband is ordered to pay for the parties' child with special needs.

In short, it is simply not clear from the trial court's letter opinion what the trial court relied upon in deciding not to modify child support or even spousal support, even though it found that there was a material change in circumstances. We reverse and remand to the trial court for reconsideration of its decision consistent with this opinion. On remand, the trial court should explicitly state or address: the factual finding of what is husband's current income, whether it finds that husband is voluntarily underemployed, and whether it is imputing income to husband (and, if so, how much). If it is imputing income to husband, it must first determine the presumptive amount of child support, as required by statute, and if it then departs from the presumptive amount of child support, it must also make written findings that justify the departure. Code § 20-108.1; Code § 20-108.2; Niblett, 65 Va. App at 625; Brody, 16 Va. App. at 650.

### III. CONCLUSION

The circuit court's finding that it "heard *no* evidence that Mr. Szawronski's earning capacity has decreased in any way" (emphasis added) is simply not correct. There was very clear, uncontested evidence that husband experienced a dramatic decrease in income and had been fired from his senior position with the company to which he and wife had sold their business. After acknowledging that dramatic decrease in income and finding it was a material change in circumstances, the trial court simply failed to indicate why this material change in circumstances did not require a change in support (at least in spousal support), especially since husband's total income is a small fraction of his previous income – and is actually less than the amount of child support and spousal support he is required to pay. Although it appears clear that the trial court had to have imputed income to husband, the trial court's letter opinion did not explicitly state that it did so, and if it did impute income, such imputation cannot be done without the trial court's first calculating the

- 11 -

presumptive amount of child support mandated by Code § 20-108.2 – and making written findings about why it was departing from the presumptive amount. Furthermore, the trial court's ruling that it would not modify support does not appear to be based upon circumstances as they existed at the time of its decision. Finally, the letter opinion seems to attribute husband's decrease in employment income solely to husband, but the record clearly shows (and wife does not contest) that both husband and wife agreed to sell their jointly owned tax company to JTH prior to their divorce. Husband did not just sell it on his own.

For all of these reasons, we reverse the trial court and remand this case to it for reconsideration – consistent with this opinion – of whether to modify spousal support and child support, including clarification of whether the trial court is imputing income to husband.

<u>Reversed and remanded.</u>